**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| TIMOTHY J. PAGLIARA,<br><br>                Plaintiff,<br><br>v.<br><br>FEDERAL HOME LOAN MORTGAGE<br>CORPORATION,<br><br>                Defendant. | No. 1:16-CV-00337 (JCC/JFA) |

**MEMORANDUM IN SUPPORT OF THE FEDERAL HOME LOAN MORTGAGE**
**CORPORATION AND THE FEDERAL HOUSING FINANCE AGENCY'S COMBINED**
**MOTION TO  DISMISS OR, IN THE ALTERNATIVE, TO SUBSTITUTE THE**
**FEDERAL HOUSING FINANCE AGENCY AS PLAINTIFF**

Ian S. Hoffman (Va. Bar No. 75002)
Howard N. Cayne*
Asim Varma*
David B. Bergman*
ARNOLD & PORTER LLP
601 Massachusetts Avenue NW
Washington, D.C.  20001
Telephone: (202) 942-5000
Facsimile: (202) 942-5999
Ian.Hoffman@aporter.com
Howard.Cayne@aporter.com
Asim.Varma@aporter.com
David.Bergman@aporter.com

*Attorneys for Federal Housing Finance Agency*

Michael J. Ciatti (Va. Bar No. 40607)
Taylor T. Lankford (Va. Bar. No. 80599)
Graciela M. Rodriguez*
Merritt E. McAlister*
KING & SPALDING LLP
1700 Pennsylvania Avenue NW, Ste. 200
Washington, D.C.  20006
Telephone: (202) 737-0500
Facsimile: (202) 626-3737
tlankford@kslaw.com
mciatti@kslaw.com
gmrodriguez@kslaw.com
mmcalister@kslaw.com

*Attorneys for Defendant Federal Home Loan Mortgage Corporation*

*Admitted *pro hac vice.*

June 17, 2016

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

BACKGROUND ........................................................................................................... 2

STANDARD OF REVIEW ........................................................................................... 3

ARGUMENT ................................................................................................................. 4

I.     THE COURT SHOULD DISMISS THE COMPLAINT OR SUBSTITUTE THE CONSERVATOR  BECAUSE PLAINTIFF'S CLAIM HAS BEEN TRANSFERRED TO AND IS ENFORCEABLE ONLY BY THE CONSERVATOR ................................. 4

    A.     HERA's Express Language Divests Plaintiff, During Conservatorship, of the Claim He Purports to Assert .................................................................................. 4

    B.     Plaintiff's Efforts to Evade the Plain Language of Section 4617(b) Are Meritless .......................................................................................................... 8

II.     PLAINTIFF'S CLAIM ALSO FAILS BECAUSE HE CANNOT IDENTIFY ANY "PROPER PURPOSE" FOR HIS INSPECTION ............................................................. 10

III.     12 U.S.C. § 4617(f) ALSO BARS PLAINTIFF'S PURPORTED INVESTIGATION ... 11

CONCLUSION .............................................................................................................. 13

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...............................................................................................3

*Burke v. City of Charleston*,
  139 F.3d 401 (4th Cir. 1998) ...............................................................................4

*Chevron U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.*,
  467 U.S. 837 (1984)...............................................................................................8

*Conn. Nat'l Bank v. Germain*,
  503 U.S. 249 (1992)...............................................................................................8

*Corley v. United States*,
  556 U.S. 303 (2009)...............................................................................................9

*Esther Sadowsky Testamentary Tr. v. Syron*,
  639 F. Supp. 2d 347 (S.D.N.Y. 2009)...............................................................7, 12

*In re Fed. Home Loan Mortg. Corp. Derivative Litig.*,
  643 F. Supp. 2d 790 (E.D. Va. 2009) .......................................................... *passim*

*In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, ERISA Litig.*,
  629 F. Supp. 2d 1 (D.D.C. 2009) .......................................................................5, 7

*Foti v. W. Sizzlin Corp.*,
  64 Va. Cir. 64 (2004) ............................................................................................6

*Gail C. Sweeney Estate Marital Tr. v. U.S. Treasury Dep't*,
  68 F. Supp. 3d 116 (D.D.C. 2014) ......................................................................12

*Kellmer v. Raines*,
  674 F.3d 848 (D.C. Cir. 2012) ...................................................................4, 5, 7, 9

*Kerns v. United States*,
  585 F.3d 187 (4th Cir. 2009) ................................................................................3

*La. Mun. Police Emps. Ret. Sys. v. FHFA*,
  434 F. App'x 188 (4th Cir. 2011) ......................................................................4, 7

*Levin v. Miller*,
  763 F.3d 667 (7th Cir. 2014) ................................................................................8

- ii -

*Little v. Cooke*,
   652 S.E.2d 129 (Va. 2007) ............................................................................9

*Pareto v. FDIC*,
   139 F.3d 696 (9th Cir. 1998) .........................................................................5

*Perry Capital LLC v. Lew*,
   70 F. Supp. 3d 208 (D.D.C. 2014) ..............................................................5, 7

*Retail Prop. Inv'rs, Inc. v. Skeens*,
   471 S.E.2d 181 (Va. 1996) ..........................................................................6, 10

*Ross v. Bernhard*,
   396 U.S. 531 (1970) .......................................................................................9

*Stratton v. Mecklenburg Cty Dep't of Soc. Servs.*,
   521 F. App'x 278 (4th Cir. 2013) ..................................................................3

*United States v. Le*,
   327 F. Supp. 2d 601 (E.D. Va. 2004) ...........................................................9

*United Techs. Corp. v. Treppel*,
   109 A.3d 553 (Del. 2014) ..............................................................................11

*Valley Forge Christian Coll. v. American United for Separation of Church & State, Inc.*,
   454 U.S. 464 (1982) .......................................................................................4

**Statutes**

12 U.S.C. § 4510 *et seq.* .......................................................................................2

12 U.S.C. § 4617(b)(2)(A) ..............................................................................1, 2, 4, 10

12 U.S.C. § 4617(b)(2)(A)(i) ...........................................................................4, 7, 8, 10

12 U.S.C. § 4617(b)(2)(B) ................................................................................2, 11

12 U.S.C. § 4617(b)(2)(J)(ii) ...........................................................................11

12 U.S.C. § 4617(f) ..........................................................................................11, 12

Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101–73, 103 Stat. 183 ...................................................................................5

Pub. L. No. 110-289, 122 Stat. 2654 (July 30, 2008) .............................................2

Va. Code Ann. § 13.1-603 ....................................................................................6

Va. Code. Ann. § 13.1-771 *et seq.* ............................................................................................6, 10

Va. Code Ann. § 13.1-771(D)(1) ...............................................................................................6

**Other Authorities**

Fed. R. Civ. P. 12(b)(1)...............................................................................................................3

Fed. R. Civ. P. 12(b)(6)...............................................................................................................3

**INTRODUCTION**

Defendant Federal Home Loan Mortgage Corporation ("Freddie Mac") hereby moves to dismiss Plaintiff's complaint.  Alternatively, the Federal Housing Finance Agency ("FHFA"), as Conservator of Freddie Mac, hereby moves for an order substituting the Conservator in place of Plaintiff.

This Court has already observed the principal reason why this motion should be granted; namely, that by this suit "Plaintiff Timothy J. Pagliara seeks to enforce his *shareholder right* to inspect and copy records of [Freddie Mac]."[1]  But this right, like all other shareholder rights, is held by FHFA alone.  When it was appointed as Conservator pursuant to the Housing and Economic Recovery Act of 2008 ("HERA"), FHFA "immediately succeed[ed]" to the shareholder right to inspect and copy, as it did to "*all rights*, titles, powers, and privileges of [Freddie Mac], and *of any stockholder*" of Freddie Mac.  12 U.S.C. § 4617(b)(2)(A) (emphasis added).

Accordingly, Plaintiff does not hold the right he purports to assert and, therefore, lacks standing to maintain this action.  During conservatorship, FHFA alone holds and has standing to enforce the rights of Freddie Mac shareholders, including the right to inspect and copy Freddie Mac's records that Plaintiff seeks to exercise.  For this reason, and the others provided herein, the court should grant Freddie Mac's motion to dismiss or, in the alternative, FHFA's motion to substitute.

---

[1]      Mem. Op. at 1, ECF No. 29 (emphasis added).

## BACKGROUND

Freddie Mac, along with Fannie Mae (together, the "Enterprises"), are federally chartered enterprises that facilitate liquidity and efficiency in the mortgage market.  *See* Compl. ¶¶ 23-26.  In July 2008, in the wake of a national crisis in the U.S. housing market, Congress created FHFA as the Enterprises' independent federal regulator by enacting HERA.  Pub. L. No. 110-289, 122 Stat. 2654 (July 30, 2008) (codified as 12 U.S.C. § 4510 *et seq*.); *see also* Compl. ¶¶ 46, 51-52.  HERA grants to FHFA authority to place Freddie Mac and Fannie Mae in conservatorship and specifies that, at the inception of conservatorship, FHFA shall "by operation of law, immediately succeed to . . . all rights, titles, powers, and privileges of the regulated entity, and of any stockholder, officer, or director of such regulated entity with respect to the regulated entity and the assets of the regulated entity."  12 U.S.C. § 4617(b)(2)(A).  HERA also expressly empowers FHFA as Conservator to "[o]perate the [Enterprises] . . . with all the powers of the shareholders, the directors, and the officers" and to "conduct all business of the [Enterprises]."  *Id.* § 4617(b)(2)(B).

FHFA placed both Enterprises into conservatorships in September 2008; they remain in that status today.  *See* Compl. ¶ 56.  Shortly after becoming Conservator, FHFA entered into agreements, commonly known as the Senior Preferred Stock Purchase Agreements ("PSPAs"), on behalf of the Enterprises with the United States Department of the Treasury ("Treasury").  Through the PSPAs, Treasury agreed to provide billions of dollars for the Enterprises' continued operations in exchange for a comprehensive package of rights.  *Id.* ¶¶ 71-80.[2]  On August 17, 2012, FHFA and Treasury executed a third amendment to the PSPAs ("the Third Amendment")

---

[2]      The PSPAs and each of their amendments are publicly available on FHFA's website at www.fhfa.gov/conservatorship/pages/senior-preferred-stock-purchase-agreements.aspx (last visited June 17, 2016).

that, among other things, changed the way the Enterprises pay dividends to Treasury in connection with Treasury's purchase of their preferred stock. *See* Compl. ¶¶ 9-10.

On January 19, 2016, Plaintiff's counsel sent demands to both Freddie Mac and Fannie Mae stating that as a shareholder in both Enterprises, Plaintiff sought to inspect their books and records in order to evaluate claims relating to the Third Amendment. *See* Compl., Ex. A. The request to Freddie Mac was denied because FHFA had succeeded to all the rights of Freddie Mac's shareholders during conservatorship. *See* Compl., Ex. B.[3] Plaintiff then filed this suit seeking to compel access to Freddie Mac's records.

## STANDARD OF REVIEW

Freddie Mac moves to dismiss all claims pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. Where, as here, a Rule 12(b)(1) motion to dismiss for lack of jurisdiction is limited to a facial attack on the pleadings, it is subject to the same standard as a motion brought under Rule 12(b)(6). *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). Accordingly, for purposes of both Rule 12(b)(1) and Rule 12(b)(6), the Court "accept[s] the well-pleaded factual allegations of [the] complaint as true," but may disregard "allegations that are merely conclusory." *Stratton v. Mecklenburg Cty Dep't of Soc. Servs.*, 521 F. App'x 278, 288 (4th Cir. 2013) (citation omitted). The factual allegations must be sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

---

[3] Similarly, Plaintiff's request as a Fannie Mae shareholder to review that entity's books and records was also denied, and Plaintiff thereafter filed a case materially similar to this one against Fannie Mae in Delaware. *See Pagliara v. Fed. Nat'l Mortg. Ass'n*, No. 1:16-cv-00193 (D. Del. filed Mar. 14, 2016).

**ARGUMENT**

I.    **THE COURT SHOULD DISMISS THE COMPLAINT OR SUBSTITUTE THE CONSERVATOR  BECAUSE PLAINTIFF'S CLAIM HAS BEEN TRANSFERRED TO AND IS ENFORCEABLE ONLY BY THE CONSERVATOR**

HERA unambiguously provides that, as Conservator, FHFA alone possesses "all rights, titles, powers, and privileges" of Freddie Mac's shareholders. 12 U.S.C. § 4617(b)(2)(A)(i). Accordingly, Plaintiff lacks standing to bring his sole claim in this case, which only the Conservator would have standing to pursue.  *See Valley Forge Christian Coll. v. American United for Separation of Church & State, Inc.*, 454 U.S. 464, 474 (1982) (A "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." (citation omitted)); *Burke v. City of Charleston*, 139 F.3d 401, 405 (4th Cir. 1998) (same).

A.    **HERA's Express Language Divests Plaintiff, During Conservatorship, of the Claim He Purports to Assert**

Congress could not have been more clear:  Upon its appointment, FHFA as Conservator "immediately succeed[ed] to . . . *all rights, titles, powers, and privileges* of the [Enterprises], and *of any stockholder*, officer, or director *of [the Enterprises]*."  12 U.S.C. § 4617(b)(2)(A) (emphasis added).  This far-reaching language ensures "that nothing was missed" and that Congress "transferred everything it could to the conservator."  *Kellmer v. Raines*, 674 F.3d 848, 851 (D.C. Cir. 2012) (alteration omitted) (quoting *Pareto v. FDIC*, 139 F.3d 696, 700 (9th Cir. 1998)).  "[T]he plain meaning of the statute is that *all* rights previously held by Freddie Mac's stockholders . . . now belong exclusively to the FHFA."  *In re Fed. Home Loan Mortg. Corp. Derivative Litig.*, 643 F. Supp. 2d 790, 795 (E.D. Va. 2009), *aff'd sub nom La. Mun. Police Emps. Ret. Sys. v. FHFA*, 434 F. App'x 188 (4th Cir. 2011).  HERA's succession provision "clearly demonstrates Congressional intent to transfer as much control of [the Enterprises] as

- 4 -

possible to the FHFA," *id.* at 797, and serves to "assure the expeditious and orderly protection of all who are interested in [Freddie Mac] by placing the pursuit of its rights, protection of its assets, and payment of its liabilities firmly in the hands of a single, congressionally designated agency." *Pareto*, 139 F.3d at 700 (interpreting a materially-similar provision in the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub. L. No. 101–73, 103 Stat. 183).

Courts have consistently applied HERA's unequivocal succession language to bar shareholders from prosecuting during the conservatorships actions purporting to assert interests that are "fairly described as . . . 'right[s]' or 'power[s]' of owning stock," *Kellmer*, 674 F.3d at 851, because "as Conservator for [the Enterprises], only the FHFA has standing to pursue [such] claims." *In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, ERISA Litig.*, 629 F. Supp. 2d 1, 4 (D.D.C. 2009). Accordingly, courts either permit FHFA as Conservator to substitute for plaintiffs asserting claims based on their status as shareholders, or dismiss shareholder claims for lack of standing in light of HERA's succession provision. *See id.* (granting FHFA's motion to substitute and noting: "Congress intended to shift as much as possible to the FHFA, including Fannie Mae's shareholders' power and standing to pursue derivative claims, regardless of whether the FHFA decides to pursue the claims itself"); *see also In re Fed. Home Loan Mortg. Corp.*, 643 F. Supp. 2d at 797 ("the FHFA is the proper plaintiff" in a derivative suit brought by a shareholder during conservatorship); *Perry Capital LLC v. Lew*, 70 F. Supp. 3d 208, 229-30, 233 (D.D.C. 2014) (dismissing shareholder plaintiffs' claims for lack of standing because "[u]nder HERA, FHFA . . . as conservator . . . immediately succeed[ed] to" the shareholder right to bring derivative claims).

The facts and law demand the same result here.  In this case, Plaintiff attempts to assert his purported right as a shareholder to seek inspection of Freddie Mac's books and records pursuant to the shareholder inspection provisions, Va. Code. Ann. § 13.1-771 *et seq.*, of the Virginia Stock Corporation Act ("VSCA").[4]  Those provisions codify "the rules of the common law with respect to the *rights of a stockholder* to inspect the books and records of a corporation," *Retail Prop. Inv'rs, Inc. v. Skeens*, 471 S.E.2d 181, 183 (Va. 1996) (emphasis added), and under them, only shareholders of record have the right to demand inspection.  *See* Va. Code Ann. § 13.1-771(D)(1); *see also Foti*, 64 Va. Cir. at 64 (Sections 13.1-771 through 13.1-773 "outline the requirements for *shareholders* to inspect and copy the records of a corporation." (emphasis added)).  Similarly, Section 6.1 of Freddie Mac's Bylaws provides that only "stockholders" have the right to inspect Freddie Mac's books and records.[5]  Given that the right to demand inspection of a corporation's books and records under both Freddie Mac's Bylaws and Virginia statutory

---

[4]     Plaintiff's lawsuit claims to have a right of inspection under the VSCA.  Compl. ¶¶ 129-134.  However, because Freddie Mac is a federally-chartered entity and is not organized under the laws of Virginia, any right Plaintiff may have to inspect Freddie Mac's books and records arises under Freddie Mac's Bylaws—not under Virginia law.  *See Foti v. W. Sizzlin Corp.*, 64 Va. Cir. 64 (2004) (holding that "[t]he General Assembly has not chosen to extend the right of inspection to shareholders of foreign corporations," and noting that the right to inspection under the VSCA only applies to "corporations" as defined in Title 13.1 to mean an entity "organized under this Act or existing pursuant to the laws of this Commonwealth." (emphases omitted)); Va. Code Ann. § 13.1-603 ("'Corporation' or 'domestic corporation' means a corporation authorized by law to issue shares . . . organized under this chapter or existing pursuant to the laws of the Commonwealth on January 1, 1986, or which, by virtue of articles of incorporation, amendment, or merger, has become a domestic corporation of the Commonwealth . . . , or which has become a domestic corporation of the Commonwealth pursuant to Article 12.1 (§ 13.1-722.2 et seq.) or Article 12.2 (§ 13.1-722.8 et seq.) of this chapter.").  In any event, both the VSCA and Freddie Mac's Bylaws provide that only stockholders have a right to inspect books and records, and FHFA has succeeded to the rights of all stockholders by virtue of the conservatorship.  Therefore, Plaintiff lacks standing to pursue his claim under both Freddie Mac's Bylaws and Virginia law.

[5]     Bylaws of the Federal Home Loan Mortgage Corporation (as amended and restated July 13, 2015), available at http://www.freddiemac.com/governance/pdf/bylaws.pdf.

law belongs only to a shareholder, Plaintiff plainly seeks to enforce a shareholder "right[], title[], power[], and privilege[]" that belongs to the Conservator alone.  12 U.S.C. § 4617(b)(2)(A)(i).

Indeed, this conclusion accords with the decisions of multiple courts holding that HERA's unequivocal succession language applies to all claims "fairly described as [relating to] a 'right[]' or 'power[]' of owning stock."  *Kellmer*, 674 F.3d at 851 (affirming FHFA's substitution in place of shareholders purporting to assert claims against former officers and directors) (first alteration not in original); *see also, e.g.*, *La. Mun. Police Emps. Ret. Sys.*, 434 F. App'x at 189-90 (affirming FHFA's substitution in place of Freddie Mac shareholders asserting claims against former officers and directors for breach of fiduciary duties, waste, and mismanagement); *In re Fed. Home Loan Mortg. Corp.*, 643 F. Supp. 2d at 795 ("As the FHFA argues, the plain meaning of the statute is that *all* rights previously held by Freddie Mac's stockholders . . . now belong exclusively to the FHFA."); *In re Fed. Nat'l Mortg. Ass'n*, 629 F. Supp. 2d at 4 ("HERA's plain language compels the conclusion that, as Conservator for Fannie Mae, only the FHFA has standing to pursue the claims asserted in these actions, and therefore its motion to substitute . . . must be granted immediately."); *Esther Sadowsky Testamentary Tr. v. Syron*, 639 F. Supp. 2d 347, 350 (S.D.N.Y. 2009) ("[U]nder the plain language of HERA, 'all rights, titles, powers, and privileges' of [Fannie Mae's] shareholders are now vested in the FHFA. . . .  FHFA is therefore the true party at interest in this case and should be substituted." (quoting 12 U.S.C. § 4617(b)(2)(A)).

In short, "HERA, by its unambiguous text, removes the power" Plaintiff purports to exercise from Freddie Mac's shareholders and "gives it to FHFA."  *Perry Capital*, 70 F. Supp. 3d at 231.  The Conservator has succeeded to any right Plaintiff may have had to demand inspection and, as a result, Plaintiff lacks standing to pursue this case.

## B.      Plaintiff's Efforts to Evade the Plain Language of Section 4617(b) Are Meritless

Despite HERA's unambiguous language, Plaintiff alleges that "all rights" as used in HERA means less than all—indeed, Plaintiff asserts that "all rights" means only *one* right.  *See* Compl. ¶ 128.  Plaintiff claims the Conservator has succeeded to nothing but his shareholder right to "bring[] derivative claims on behalf of the corporation."  *Id.*  From there, Plaintiff asserts that his complaint seeking to compel inspection of Freddie Mac's books and records brings a "direct claim[]" to which HERA is "no bar."  *Id.*

Plaintiff is wrong.  His interpretation, which reads into HERA restrictions that Congress did not provide, cannot survive the statute's plain language.  If "all rights . . . of any stockholder," 12 U.S.C. § 4617(b)(2)(A)(i), was meant to refer "only to derivative claims, [it is] a broad and roundabout way of expressing that narrower idea."  *Levin v. Miller*, 763 F.3d 667, 673 (7th Cir. 2014) (Hamilton, C.J., concurring).[6]  But instead of adopting imprecise "roundabout" statutory interpretations, *id.*, "courts must presume that a legislature says in a statute what it means and means in a statute what it says there."  *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992).  "When the words of a statute are unambiguous, then, this first canon is also the last:  judicial inquiry is complete."  *Id.* at 254 (internal quotation marks and citation omitted); *see also Chevron U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984) ("If the intent of Congress is clear, that is the end of the matter, for the court . . .

---

6        Elsewhere, Plaintiff has argued that *Levin*, and other cases interpreting FIRREA's succession provision "have established a uniform rule: FIRREA's succession provision bars stockholders from bringing derivative claims, but not direct claims."  Pl.'s Opp'n to Mot. to Stay at 22, ECF No. 21. But the question of a conservator or receiver's succession to non-derivative claims was not squarely presented or briefed in any of these cases. *See id.* (citing cases). For example, while the majority in *Levin* made statements to the effect that FIRREA's succession provision may not extend to direct claims, no party had advocated or briefed that issue, which was not a question in dispute before the Panel.  *See* 763 F.3d at 672.

must give effect to the unambiguously expressed intent of Congress").  As the D.C. Circuit has

explained, the only interpretative tool needed to analyze HERA's succession provision is thus

adherence to Justice Frankfurter's admonition: "(1) Read the statute; (2) read the statute; (3) read

the statute!"  *Kellmer*, 674 F.3d at 850 (citation omitted).  When Congress conveyed "*all* rights .

. . of any stockholder" with respect to Freddie Mac, Congress meant exactly that—*all* rights.

Another "basic canon of statutory interpretation" is that a statute should be construed

[such that] all of its provisions [are] given effect" and "no part . . . is rendered inoperative or

superfluous."  *United States v. Le*, 327 F. Supp. 2d 601, 614 (E.D. Va. 2004).[7]  Plaintiff's

interpretation would also violate this rule because interpreting "*all* rights" of Freddie Mac's

stockholders to mean *only* the right to pursue derivative claims renders meaningless the essence

of HERA's succession provision.  This is because even absent HERA's language providing that

FHFA succeeds to "all rights . . . of any stockholder," the Conservator has already succeeded to

the right to assert derivative claims.  Derivative claims belong to *the company*, and not to any

individual shareholder bringing a derivative action.  *E.g. Ross v. Bernhard*, 396 U.S. 531, 538

(1970) ("The claim pressed by the stockholder against directors or third parties is not his own but

the corporation's." (internal quotation marks and citation omitted)); *Little v. Cooke*, 652 S.E.2d

129, 136 (Va. 2007) ("A derivative action . . . belongs to the corporation rather than the

shareholder." (citation omitted)).  FHFA "immediately succeed[ed] to . . . all rights, titles,

powers, and privileges of [*Freddie Mac*]," so interpreting the phrase "rights . . . of any

---

[7]      *See also, e.g.*, *Corley v. United States*, 556 U.S. 303, 314 (2009) ("[O]ne of the most
basic interpretative canons," is that a "statute should be construed so that effect is given to all its
provisions, so that no part will be inoperative or superfluous." (citation omitted)).

stockholder" to mean only the right to bring derivative claims would add nothing to the Conservator's succession and render that provision superfluous.  12 U.S.C. § 4617(b)(2)(A).

In any event, the purported distinction between a shareholder's right to pursue direct claims and a shareholder's right to pursue derivative claims has no bearing on the succession analysis here.  The rights to which FHFA has succeeded plainly include the right upon which Plaintiff purports to predicate the single claim he seeks to enforce in this action.  Whether Plaintiff labels his complaint as a *direct* or *derivative* one does not change the inescapable conclusion that HERA divested him of the underlying right he sues to enforce—that is, the "right" granted only to shareholders to inspect and copy Freddie Mac's books and records.  12 U.S.C. § 4617 (b)(2)(A)(i).

## II.     PLAINTIFF'S CLAIM ALSO FAILS BECAUSE HE CANNOT IDENTIFY ANY "PROPER PURPOSE" FOR HIS INSPECTION

In addition to his lack of standing, the interplay of HERA's succession provision with Freddie Mac's Bylaws and Virginia's books and records law independently requires dismissal of the complaint for the additional reason that it precludes Plaintiff from alleging any "proper purpose" for the inspection he seeks.  Both Freddie Mac's Bylaws and Virginia law require a "proper purpose" for the inspection of books and records.  *See* Freddie Mac Bylaws, § 6.1(b) (shareholder must demonstrate that inspection request is "made in good faith and for a proper purpose"); *Skeens*, 471 S.E. 2d at 183 (Section 13.1-771 requires the inspection be made "in good faith and for a proper purpose.").  Because HERA's succession provision withdraws from Plaintiff the right to assert any claim with respect to matters arising from an inspection of books and records, Plaintiff has no "proper purpose" to justify such an inspection.

When a shareholder's "purpose for seeking books and records could not be effectuated . . . because, for example, [he] would lack standing to sue if the inspection warranted further legal

action," the inspection's purpose is not "proper" and the demand may be denied.  *United Techs. Corp. v. Treppel*, 109 A.3d 553, 559 & n. 31 (Del. 2014) (collecting cases).  That is the case here.  For the reasons stated above, Plaintiff cannot pursue claims for "potential breaches of fiduciary and statutory duty by Directors and/or officers of Freddie Mac" and "other claims the Company may have."  Compl. ¶ 123.  Thus, Plaintiff has no proper purpose to support his inspection demand.

## III.    12 U.S.C. § 4617(f) ALSO BARS PLAINTIFF'S PURPORTED INVESTIGATION

Dismissal of Plaintiff's complaint, or the Conservator's substitution, is also independently compelled under HERA's jurisdictional withdrawal provision, 12 U.S.C. § 4617(f), which bars this and every other federal and state court from "tak[ing] any action to restrain or affect the exercise of powers or functions of the [FHFA] as a conservator."

As discussed above, under HERA, FHFA alone is authorized during the conservatorship to "[o]perate [Freddie Mac] . . . with all the powers of the shareholders, the directors, and the officers."  12 U.S.C. § 4617(b)(2)(B).  HERA further empowers the Conservator to take any action "necessary to put the regulated entity in a sound and solvent condition" and "appropriate to carry on the business of the regulated entity," to "conduct all business of [Freddie Mac]," and to "perform all functions of [Freddie Mac] consistent with the appointment as conservator."  *Id.* § 4617(b)(2)(B), (D).  Additionally, HERA provides that only the Conservator can "determine[] [what] is in the best interests" of the Enterprises.  *Id.* § 4617(b)(2)(J)(ii).  If there is to be any investigation into Plaintiff's alleged claims of mismanagement or misconduct, the authority to conduct such an investigation thus fall within the Conservator's exclusive powers.  Indeed, this Court has observed that, combined, HERA's provisions ensure that "the conservator [has] broad, sweeping authority over Freddie Mac" and "ma[ke] clear that [Congress] left to the FHFA, not to

Freddie Mac's shareholders, the discretion to decide how best to manage [Freddie Mac]." *In re Fed. Home Loan Mortg.*, 643 F. Supp. 2d at 798.

Accordingly, to allow Plaintiff to exercise a right no longer held by Freddie Mac's shareholders, *viz.*, the right to access the books and records of Freddie Mac, for the purpose of conducting an investigation into Freddie Mac's operations, "would interfere with and potentially usurp precisely the powers granted to the FHFA by HERA." *Gail C. Sweeney Estate Marital Tr. v. U.S. Treasury Dep't*, 68 F. Supp. 3d 116, 126 (D.D.C. 2014) (quoting *Sadowsky*, 639 F. Supp. 2d at 351). Section 4617(f) thus provides "a second, independent basis" for dismissing Plaintiff's claim or granting the Conservator's motion to substitute. *Id.* at 125-26 (granting FHFA's motion to substitute because decision whether to bring suit arising from the sale of Fannie Mae's assets during conservatorship is "plainly the type of business decision Congress entrusted to the Conservator in HERA").

Courts—including this one—have consistently held that Section 4617(f) bars Enterprise shareholders from pursuing claims such as Plaintiff's during conservatorship. *See, e.g.*, *In re Fed. Home Loan Mortg.*, 643 F. Supp. 2d at 799 ("[A]llowing the plaintiffs to remain in th[e] action would violate § 4617(f)" where "FHFA has properly moved to substitute itself for shareholders who lack standing" because shareholders "do not have any 'rights' that are implicated); *Sweeney*, 68 F. Supp. 3d at 125-26 (granting FHFA's motion to substitute because decision whether to bring suit arising from sale of Fannie Mae's assets is "plainly the type of business decision Congress entrusted to the Conservator in HERA"). Section 4617(f) compels the same conclusion here. Allowing Plaintiff to pursue his investigation would "be inconsistent with the Conservator's exercise of its statutory power" and, therefore, permitting Plaintiff to proceed with this suit would violate Section 4617(f). *Sadowsky*, 639 F. Supp. 2d at 350.

## CONCLUSION

Plaintiff's asserted right to demand inspection of Freddie Mac's books and records has been transferred expressly and unequivocally to FHFA as Conservator, and Plaintiff does not hold that shareholder right during conservatorship.  Accordingly, Plaintiff lacks standing to present his sole claim in this action; only FHFA as Conservator would have standing to pursue it. Moreover, because Plaintiff lacks standing to bring the claims he asserts he is investigating, his inspection request lacks the requisite "proper purpose."  Further, permitting Plaintiff to proceed with his investigation into the records and operations of Freddie Mac would "restrain or affect" the powers and functions of FHFA as Conservator in violation of HERA.  Because HERA's succession and jurisdiction-withdrawal provisions both bar Plaintiff from pursuing his claim, the Court should dismiss Plaintiff's complaint, or in the alternative, substitute FHFA for Plaintiff.

Dated:  June 17, 2016

Respectfully submitted,

s/ Ian S. Hoffman
Ian S. Hoffman (Va. Bar No. 75002)
Howard N. Cayne*
Asim Varma*
David B. Bergman*
ARNOLD & PORTER LLP
601 Massachusetts Avenue, NW
Washington, D.C.  20001
Telephone: (202) 942-5000
Facsimile: (202) 942-5999
Ian.Hoffman@aporter.com
Howard.Cayne@aporter.com
Asim.Varma@aporter.com
David.Bergman@aporter.com

s/ Michael J. Ciatti
Michael J. Ciatti (Va. Bar No. 40607)
Taylor T. Lankford (Va. Bar. No. 80599)
Graciela M. Rodriguez*
Merritt E. McAlister*
KING & SPALDING LLP
1700 Pennsylvania Avenue NW, Ste. 200
Washington, D.C.  20006
Telephone: (202) 737-0500
Facsimile: (202) 626-3737
tlankford@kslaw.com
mciatti@kslaw.com
gmrodriguez@kslaw.com
mmcalister@kslaw.com

*Attorneys for Federal Housing Finance Agency*

*Attorneys for Defendant Federal Home Loan Mortgage Corporation*

*Admitted *pro hac vice.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that, on June 17, 2016, a true and correct copy of the foregoing was filed electronically using the Court's CM/ECF system, causing a true and correct copy to be served on all counsel of record.

/s/ Ian S. Hoffman
Ian S. Hoffman  (Va. Bar No. 75002)
ARNOLD & PORTER LLP
601 Massachusetts Avenue NW
Washington, D.C.  20001
Telephone: (202) 942-5000
Facsimile: (202) 942-5999
Ian.Hoffman@aporter.com

*Attorney for Federal Housing Finance Agency*

- 14 -