**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| TIMOTHY J. PAGLIARA, <br><br>          Plaintiff, <br><br><br> v. <br><br><br> FEDERAL HOME LOAN MORTGAGE CORPORATION, <br><br>          Defendant. | No. 1:16-CV-00337 (JCC/JFA) |

**REPLY IN SUPPORT OF DEFENDANTS' COMBINED
MOTION TO DISMISS OR, IN THE ALTERNATIVE,
TO SUBSTITUTE FHFA AS PLAINTIFF**

Ian S. Hoffman (Va. Bar No. 75002)
Howard N. Cayne*
Asim Varma*
David B. Bergman*
ARNOLD & PORTER LLP
601 Massachusetts Avenue NW
Washington, D.C.  20001
Telephone: (202) 942-5000
Facsimile: (202) 942-5999
Ian.Hoffman@aporter.com
Howard.Cayne@aporter.com
Asim.Varma@aporter.com
David.Bergman@aporter.com

*Attorneys for Federal Housing
Finance Agency*

Michael J. Ciatti (Va. Bar No. 40607)
Taylor T. Lankford (Va. Bar. No. 80599)
Graciela M. Rodriguez*
Merritt E. McAlister*
KING & SPALDING LLP
1700 Pennsylvania Avenue NW, Ste. 200
Washington, D.C.  20006
Telephone: (202) 737-0500
Facsimile: (202) 626-3737
tlankford@kslaw.com
mciatti@kslaw.com
gmrodriguez@kslaw.com
mmcalister@kslaw.com

*Attorneys for Defendant Federal Home Loan
Mortgage Corporation*

*\* Admitted pro hac vice*

July 29, 2016

## TABLE OF CONTENTS

ARGUMENT ................................................................................................................1

A.   The Court Should Dismiss the Complaint Because FHFA as Conservator Succeeded to "All Rights" of the Stockholders .................................................................................. 3

1.   "All Rights" Means *All* Rights .................................................................... 3

2.   Plaintiff Provides No Judicial Support for His Proposal to Limit the Conservator's Succession Rights in a Manner Directly Contrary to the Plain and Unambiguous Terms of HERA .................................................................................................... 7

3.   The Doctrine of Constitutional Avoidance Provides No Basis to Limit the Conservator's Rights ................................................................................... 10

B.   Plaintiff's Demand to Inspect is also Barred by 12 U.S.C. § 4617(f) ................................. 11

C.   Plaintiff Has Not Identified a "Proper Purpose" for His Request to Inspect Books and Records   13

CONCLUSION ........................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Activision Blizzard, Inc. Stockholder Litig.*,
    124 A.3d 1025 (Del. Ch. 2015)...............................................................6

*Bank of Giles Cty. v. Mason*,
    98 S.E.2d 905 (Va. 1957)..............................................................14, 15

*Barnes v. Harris*,
    783 F.3d 1185 (10th Cir. 2015) ...............................................................9

*In re Beach First Nat'l Bancshares, Inc.*,
    702 F.3d 772 (4th Cir. 2012) ...............................................................9

*Esther Sadowsky Testamentary Trust v. Syron*,
    639 F. Supp.2d 347 (S.D.N.Y. 2009).............................................7, 8, 12

*FCC v. Fox Tel. Stations, Inc.*,
    556 U.S. 502 (2009)...............................................................11

*Fed. Home Loan Mortg. Corp. v. Gaines*,
    589 Fed. App'x 314 (6th Cir. 2014) ...............................................................10

*Fed. Home Loan Nat'l Mortg. Corp. v. Shamoon*,
    922 F. Supp. 2d 641 (E.D. Mich. 2013).............................................10

*In re Fed. Nat'l Mortg. Ass'n Secs., Deriv. & ERISA Litig.*,
    629 F. Supp. 2d 1 (D.D.C. 2009) ...............................................................8, 12

*In re Federal Home Loan Mortgage Corporation Derivative Litigation*,
    643 F. Supp. 2d 790 E.D. Va. 2009), aff'd sub nom. La. Mun. Police Emps.
    Ret. Sys. v FHFA, 434 Fed. App'x 188 (4th Cir. 2011)
    ...............................................................6, 7, 12, 13

*Gail C. Sweeney Estate Marital Tr. v. U.S. Treasury Dep't*,
    68 F. Supp. 3d 116, 125-26 (D.D.C. 21014)...............................................11

*Gonzales v. Carhart*,
    550 U.S. 124 (2007)...............................................................11

*Hennepin Cty. v. Fed. Nat'l Mortg. Ass'n*,
    742 F.3d 818 (8th Cir. 2014) ...............................................................4

*Kellmer v. Raines*,
674 F.3d 848 (D.C. Cir. 2012) ...........................................................................8

*Levin v. Miller*,
763 F.3d 667 (7th Cir. 2014) ...........................................................................8, 9

*Lubin v. Skow*,
382 F. App'x 866 (11th Cir. 2010) ....................................................................9

*Pareto v. FDIC*,
139 F.3d 696 (9th Cir. 1998) ............................................................................9

*Perry Capital LLC v. Lew*,
70 F. Supp. 3d 208 (D.D.C. 2014) ..........................................................1, 14, 15

*Remora Invs., LLC v. Orr*,
673 S.E.2d 845 (Va. 2009) ................................................................................14

*Retail Prop. Inv'rs, Inc. v. Skeens*,
471 S.E. 2d 181 (Va. 1996) ...............................................................................15

*Syriani v. Freddie Mac Multiclass Certificates, Series 33365*,
No. CV 12-3035, 2012 WL 6200251 (C.D. Cal. July 10, 2012) ...........................10

*United Techs. Corp. v. Treppel*,
109 A.3d 553 (Del. 2014) ..................................................................................15

*Wenzel v. Knight*,
No. 3:14-cv-432, 2015 WL 222182 (E.D. Va. Jan. 14, 2015)................................14

## Statutes

12 U.S.C. § 4617(b)(2)(A) ........................................................................4, 5, 8, 11

12 U.S.C. § 4617(b)(2)(A)(i) ........................................................................ *passim*

12 U.S.C. § 4617(b)(2)(D) ...........................................................................13

12 U.S.C. § 4617(b)(2)(J)(ii) ........................................................................13

12 U.S.C. § 4617(b)(2)(K)(i) ........................................................................10

12 U.S.C. § 4617(f) ....................................................................................2, 5, 11, 12

## Other Authorities

American Law Institute, Principles of Corp. Governance § 7.01 (1994) .......................6

*Merriam Webster Dictionary*, *available at* http://www.merriam-webster.com/dictionary/ with%20respect%20to........................................................................4

Oxford Modern English Dictionary (2d ed. 1996)........................................................................4

*Random House Webster's Unabridged Dictionary* (2d ed. 2001)....................................................4

U.S. Const. amend. V.........................................................................................................11

Through the injunctive relief sought in his Complaint, Plaintiff seeks to enforce the power of inspection, investigation, and supervision over Freddie Mac. As demonstrated in our opening brief and confirmed below, however, Congress divested Plaintiff of the very power he now seeks to enforce on September 6, 2008, when FHFA placed Freddie Mac (and Fannie Mae, together the "Enterprises") into statutory conservatorship.[1] Specifically, under the comprehensive statutory scheme governing Freddie Mac's placement into conservatorship and the appointment of FHFA as its conservator, Congress expressly transferred to FHFA "all rights, titles, *powers*, and privileges" of Freddie Mac, its officers and directors, ***and its stockholders***. Because Plaintiff does not hold the powers he seeks to exercise here—*i.e.*, to inspect Freddie Mac's books and records for the purpose of challenging the propriety and legality of the Conservator's conduct of Enterprise operations—his claim must be dismissed. Alternatively, because the Conservator is now the sole party holding the powers Plaintiff seeks to exercise, the Conservator should be substituted into this case in place of Plaintiff.

When it created FHFA, Congress imbued it—when acting as Conservator—with "extraordinary" powers to conduct, direct, and oversee all aspects of Freddie Mac and Fannie Mae's operations, activities and affairs, free from judicial challenge and interference.[2] To accomplish this, Congress provided for the statutory transfer to FHFA, immediately upon the placement of Freddie Mac (or Fannie Mae) into conservatorship, of "all rights, titles, powers, and privileges of the regulated entity [in conservatorship], and of any *stockholder*, officer, or director

---

[1]    *See* Mem. in Support of the Federal Home Loan Mortgage Corp. and the Federal Housing Finance Agency's Combined Motion to Dismiss or, in the Alternative, to Substitute the Federal Housing Finance Agency as Plaintiff (filed June 17, 2016), ECF No. 34 ("Opening Br."); Plaintiff's Opp. to Motion to Dismiss or, in the Alternative, to Substitute the Federal Housing Finance Agency as Plaintiff (filed July 19, 2016), ECF No. 36 ("Opp.").

[2]    *Perry Capital LLC v. Lew*, 70 F. Supp. 3d 208, 225 (D.D.C. 2014), *appeal pending* No. 14-5243 (D.C. Cir. filed Oct. 8, 2014).

of such regulated entity with respect to the regulated entity and the assets of the regulated entity." 12 U.S.C. § 4617(b)(2)(A)(i) (emphasis added). Congress also insulated from judicial review the Conservator's exercise of the "rights, titles, powers, and privileges" to which it had succeeded by operation of law, prohibiting the courts from "tak[ing] any action to restrain or affect the exercise of [the Conservator's] powers or functions." 12 U.S.C. §§ 4617(f).

As evidenced by the stated purpose for which Plaintiff seeks to exercise power of inspection—a power he no longer holds—this suit cannot be reconciled with the total operational and supervisory independence Congress intended for FHFA when acting as statutory Conservator. Plaintiff seeks inspection for the purpose of investigating, *inter alia*, "potential wrongdoing," "potential breaches of fiduciary and statutory duty" by Freddie Mac's directors or officers, and "FHFA and/or Treasury's involvement in such breaches." Opp. 1; Compl. ¶ 123. Plaintiff thus seeks, as a shareholder, to exercise the power to inspect, investigate, supervise, and challenge the Conservator's operation of Freddie Mac.

Plaintiff's arguments in the face of these unambiguously broad statues are meritless. Plaintiff focuses on the language "with respect to the regulated entity and the assets of the regulated entity" as the basis for asserting that FHFA has succeeded to derivative but not direct claims. But Plaintiff's extended argument about the difference between direct and derivative claims is beside the point. First, the underlying "power" that Plaintiff seeks to exercise is no longer his, no matter how Plaintiff packages it for purposes of litigation. Second, HERA transfers all shareholder rights, whether direct or derivative, to the Conservator. And third, in all events, the claim Plaintiff asserts here is derivative, not direct.

In addition, Plaintiff provides no support for his attempt to limit the scope of Section 4617(f) to actions interfering with FHFA's exercise of business judgment with respect to Freddie

2

Mac.  What is more, investigations into the propriety of the Third Amendment, including what Plaintiff proposes here, involve quintessential business judgments.  Finally, despite Plaintiff's claims to the contrary, any claim Plaintiff might eventually bring would be a derivative claim that Plaintiff clearly lacks standing to assert.  Therefore, the inspection demand is not made for a "proper purpose."

### A. The Court Should Dismiss the Complaint Because FHFA as Conservator Succeeded to "All Rights" of the Stockholders

#### 1. "All Rights" Means *All* Rights

Though Plaintiff's Opposition is filled with charges (not now properly before the Court) that Defendants acted wrongfully in agreeing to the "Third Amendment," this case in fact presents a single, straightforward question of statutory interpretation:  Does HERA's express transfer to the Conservator of "***all rights, titles, powers, and privileges of*** [Freddie Mac], and of any stockholder . . . with respect to [Freddie Mac]," 12 U.S.C. § 4617(b)(2)(A)(i) (emphasis added), include a stockholder's right to inspect Freddie Mac's corporate books and records?  Plainly it does.  Plaintiff concedes that his claim is premised on a "right" of a stockholder to exercise the power to inspect Freddie Mac's books and records, and he admits that this inspection power is restricted to "shareholders" as a matter of law.  *See, e.g.*, Opp. 1, 9.  These concessions are dispositive.  HERA expressly and unambiguously transferred all shareholder rights, including the right to inspect books and records, to FHFA during conservatorship.  Accordingly, Plaintiff lacks standing to pursue that right in this litigation.[3]  The Court does not need to proceed further to resolve this motion and dismiss the case.

---

[3]   This conclusion is not at all inconsistent with the statement by former FHFA Director Lockhart that Freddie Mac's "shareholders are still in place; both the preferred and common shareholders have an economic interest in the companies."  *See* Opp. 5-6.  That the Director at the outset of the conservatorship acknowledged the possibility that Plaintiff's ownership of Freddie Mac stock might ultimately afford him a residual economic interest does not mean that

Footnote continued on next page

Despite the plain language of HERA (12 U.S.C. § 4617(b)(2)(A)), Plaintiff reads into the statute a word not included by Congress and, on this basis, proceeds to argue that the Conservator "has *not* succeeded to 'all' of Mr. Pagliara's rights as a stockholder," and instead has succeeded only to "*certain*" rights.  Opp. 5, 15 (emphasis added).  According to Plaintiff, the Conservator succeeded only to one specific shareholder right, *i.e.,* the right to pursue derivative claims on behalf of Freddie Mac.  *See* Opp. 2, 12-17.

Plaintiff is wrong, and he may not rewrite the statute—substituting the phrase "certain rights" where the statute plainly states, "all rights."  "All rights, titles, powers, and privileges" means "*all* rights, titles, powers, and privileges"—not "*certain* rights, titles, powers, and privileges."  *See Hennepin Cty. v. Fed. Nat'l Mortg. Ass'n*, 742 F.3d 818, 822 (8th Cir. 2014) (holding, with respect to HERA's bar on "all taxation," that "'all' means all" (citation omitted)).

Moreover, Plaintiff offers no textual reason supporting his assertion that the phrase "with respect to the regulated entity and [its] assets" limits the Conservator's succession to only the derivative rights of Freddie Mac's stockholders.  *See* Opp. 16.  It would have been easy for Congress to state that the Conservator succeeds to only the derivative rights or claims of stockholders, but Congress instead used much broader language.  The phrase "with respect to the regulated entity" means "about or concerning" or "in relation to" Freddie Mac.  *See, e.g.*, *Merriam Webster Dictionary*, *available at* http://www.merriam-webster.com/dictionary/ with%20respect%20to (defining "with respect to" as meaning "about or concerning" or "in relation to"); *Random House Webster's Unabridged Dictionary*, at 1640 (2d ed. 2001) (defining "with respect to" as meaning "concerning"); The Oxford Modern English Dictionary, at 865 (2d

---

Footnote continued from previous page
§ 4617(b)(2)(A) failed to transfer to the Conservator "all rights, titles, powers, and privileges" held by all shareholders, including Plaintiff.

ed. 1996) (defining "with respect to" as meaning "as concerns").  Plaintiff does not, and cannot, contest that his asserted shareholder right to inspect Freddie Mac's books and records relates to or concerns Freddie Mac; it obviously does.[4]

Further, the shareholder right Plaintiff seeks to invoke here—the power to inspect records of the current and ongoing relationship between the Conservator and Freddie Mac, and to sue if there is anything he does not like—is incompatible with the operational independence Congress intended for the Conservator.[5]  If Plaintiff is permitted to exercise the power he no longer holds—the asserted power to inspect Freddie Mac's books and records while Freddie Mac is still in conservatorship—it would establish Plaintiff, through the invocation of this Court's jurisdiction, as a supervisor with judicial enforcement authority over the Conservatorship operations, in direct contravention of 12 U.S.C. §§ 4617(b)(2)(A) and 4617(f).  Plaintiff's argument runs counter to the clear purpose of HERA, which is to give the Conservator broad authority to run the Enterprises free from outside interference.

Consideration of another shareholder right—the right to vote to elect a board of directors—confirms why the Conservator's succession to all shareholder rights cannot be limited

---

[4]    Plaintiff asserts that the fact that he still owns his Freddie Mac stock and maintains his right to sell that stock demonstrates that FHFA has not succeeded to "all" his rights as a shareholder. Opp. 14-15.  But the reason for this is simple—the right to sell his Freddie Mac shares merely reflects the *shareholder's* continuing economic interest in the regulated entity.  *See supra* n.3. As such, it does not fall within the plain language of § 4617(b)(2)(A).

[5]    Mr. Pagliara seeks, among other things: (1) "[a]ll Board Materials concerning the Third Amendment;" (2) "[a]ll Board Materials concerning the involvement of FHFA and/or Treasury in the management of the business and affairs of [Freddie Mac];" (3) all materials "concerning FHFA's and/or Treasury's approval of [Freddie Mac] business decisions, transactions, policies, and/or other matters;" (4) all materials "concerning FHFA's and/or Treasury's directives and/or instructions to [Freddie Mac];" (5) "all Board Materials concerning the declaration and/or payment of dividends to Treasury" pursuant to the PSPAs; (6) "all Board Materials concerning any report, analysis, or evaluation of the solvency or insolvency of [Freddie Mac];" (7) "all Board Materials pertaining to . . . conduct of the conservatorship as administered by FHFA and/or Treasury;" and (8) all documents "concerning FHFA's and/or Treasury's oversight of [Freddie Mac's] public statements, including the subject matter or content of speeches, interviews, press releases, congressional testimony, and/or [Freddie Mac's] website."  Compl., Ex. A at 2-4.

to the right to bring derivative claims.  According to Plaintiff's own authorities, shareholder voting rights belong to the shareholder individually.  *See* American Law Institute, Principles of Corp. Governance § 7.01 cmt. c (1994) (cited at Opp. 18-19) (describing direct claims to include "actions to enforce the right to vote . . . [and] actions to inspect corporate books and records"); *see also, e.g.*, *In re Activision Blizzard, Inc. Stockholder Litig.*, 124 A.3d 1025, 1049 (Del. Ch. 2015) (describing "the right to vote" as a "classic example[]" of a direct claim).

Nevertheless, no stockholder can seriously dispute the Conservator has succeeded to the stockholder's previously-held right to vote on the election of Freddie Mac's board.  Concluding otherwise would be antithetical to HERA's purposes.  Through HERA's succession provision specifically, Congress "inten[ded] to transfer as much control of Freddie Mac as possible to the FHFA" as Conservator.  *See In re Fed. Home Loan Mortg. Corp. Deriv. Litig.*, 643 F. Supp. 2d 790, 797 (E.D. Va. 2009), *aff'd sub nom. La. Mun. Police Emps. Ret. Sys. v FHFA*, 434 Fed. App'x 188 (4th Cir. 2011)).  And one way in which the Conservator has exercised its exclusive power to control and operate Freddie Mac is to reconstitute the management and board of directors, notwithstanding the common stockholders' pre-Conservatorship right to elect the directors.  Because this voting right is one of the "rights . . . of [a] stockholder . . . with respect to [Freddie Mac]," the Conservator has succeeded to it, even if a claim seeking to enforce that right might in some sense be considered direct.  Here, the same principle applies to any pre-conservatorship shareholder power to inspect Freddie Mac's books and records:  the Conservator has succeeded to this and "all" other powers previously held by Freddie Mac shareholders. [6]

---

[6]     Though the Court need not decide the issue to resolve this motion, Plaintiff is wrong that "Freddie Mac is governed by a board of directors" that "owes fiduciary duties to Freddie Mac." Opp. 4.  During the conservatorship, the Company's board of directors acts only through the authority expressly delegated to them by the Conservator, which has succeeded to "all rights, titles, powers, and privileges" of "any . . . officer, or director" of Freddie Mac.  12 U.S.C.

Footnote continued on next page

2.   **Plaintiff Provides No Judicial Support for His Proposal to Limit the Conservator's Succession Rights in a Manner Directly Contrary to the Plain and Unambiguous Terms of HERA**

None of the cases upon which Plaintiff relies suggest any limitation to the Conservator's statutory rights of succession.  While several of those cases addressed overtly derivative claims (brought by shareholders on behalf of the company itself), the courts' application of the succession provision did not purport to limit the Conservator's succession to only such claims.  For example, Plaintiff cites *In re Federal Home Loan Mortgage Corporation Derivative Litigation*, for the notion that HERA only bars "derivative suits by shareholders of the affected companies."  Opp. 14 (citing 643 F. Supp. 2d at 795).  But in that case, the Court actually said that "the plain meaning of the statute is that ***all rights*** previously held by Freddie Mac's stockholders, ***including*** the right to sue derivatively, now belong exclusively to the FHFA."  *Id*. 643 F. Supp. 2d at 795 (emphasis added).  And the court in *Esther Sadowsky Testamentary Trust v. Syron*, granted FHFA's motion to substitute, holding that "under the plain language of HERA, 'all rights, titles, powers, and privileges' of Freddie Mac's shareholders are now vested in the

---

Footnote continued from previous page

§ 4617(b)(2)(A)(i).  As Freddie Mac disclosed in its SEC filings:  "The Conservator has delegated certain authority to the Board of Directors to oversee, and management to conduct, day-to-day operations.  The Conservator retains overall management authority, including the authority to withdraw its delegations of authority at any time."  Freddie Mac, Annual Report (Form 10-K), at 20 (2008), *available at* http://goo.gl/encrgA.  *See also* Fannie Mae, Annual Report (Form 10-K), at 24 (2008), *available at* http://goo.gl/QxqVYi ("Our directors do not have any duties to any person or entity except to the conservator.  Accordingly, our directors are not obligated to consider the interests of the company, the holders of our equity or debt securities or the holders of Fannie Mae MBS unless specifically directed to do so by the conservator.").  For this same reason, Plaintiff is wrong that Freddie Mac declares dividends in the "sole discretion" of its Board.  *See* Opp. 7 (emphasis omitted).

FHFA," and that these rights "***include*** the right to bring an action on Freddie Mac's behalf."[7] 639 F. Supp. 2d 347, 350 (S.D.N.Y. 2009) (emphasis added).

Similarly, contrary to Plaintiff's position, there is nothing about *Kellmer v. Raines*, 674 F.3d 848, 850-51 (D.C. Cir. 2012), or any motion filed in that litigation, that should make this Court "skeptical" of Defendants' position here. *See* Opp. 16. That the Conservator, more than eight years ago, opted not to exercise its substitution rights with respect to one particular claim presented by one particular plaintiff in one particular litigation in no way suggests FHFA did not have the right to seek substitution had it wished to do so. Nor did the *Kellmer* court suggest any limitation on FHFA's statutory substitution rights. To the contrary, the *Kellmer* court noted that substitution extended to any right, title, power, or privilege, and granted substitution as to all the claims for which FHFA requested it. *Id.*[8]

Plaintiff also places great weight on cases that differentiate between direct and derivative claims. For example, Plaintiff relies heavily on *Levin v. Miller*, 763 F.3d 667 (7th Cir. 2014). But in that case, the court addressed claims for money damages against former officers and directors based on alleged harm they had caused, requiring the court to assess whether such claims were derivative (*i.e.*, based on harm to the company) or direct (*i.e.*, based on harm to the individual shareholder plaintiff). There are no such claims here—Plaintiff here demands to exercise the power to inspect Freddie Mac's books and records. Because the dispositive issue here is whether the Conservator succeeds to an asserted shareholder power to inspect, not

---

[7]     In *In re Fed. Nat'l Mortg. Ass'n Secs., Deriv. & ERISA Litig.*, 629 F. Supp. 2d 1, 4 (D.D.C. 2009), the courts granted defendants' motion for substitution as to derivative claims. There was no occasion for the courts to apply § 4617(b)(2)(A) to non-derivative claims.

[8]     Plaintiff argues that the holding of *Kellmer* was that "regardless of its origins, a shareholder's ability to sue *derivatively* given certain conditions in fairly described as a 'right[]' or 'power[]' of owning stock." *See* Opp. 16 n.5. By the same token, there is no room to dispute that "regardless of its origins," a shareholder's power to inspect corporate books and records is a "'right[]' or 'power[]' of owning stock."

whether the Conservator succeeds to a claim for money damages based on harm to the company and/or its shareholders, *Levin* is plainly irrelevant here.

In all events, the suggestion in *Levin*, upon which Plaintiff places central reliance, that a conservator's succession to "all rights" of a stockholder would not extend to direct claims was not an issue of contention in that litigation.  Indeed, the parties in that case had no occasion  even to brief the issue.  *See* 763 F.3d at 672. [9]  Indeed, the only judicial exploration of the issue in *Levin* was Judge Hamilton's persuasively reasoned concurrence.  As Judge Hamilton correctly concluded, FIRREA's succession language cannot be read as limited in application to derivative claims:

> It is not obvious to me that the language must be interpreted so narrowly, nor did the cases cited at page 2 of the opinion confront this issue or require that result.  ***The FDIC [as conservator or receiver] can already pursue what would be a derivative claim because the claim really belongs to the failed depository institution itself.***  So what does the language referring to "the rights . . . of any stockholder" add to the meaning and effect of the statute?  The doctrine that statutes should not be construed to render language mere surplusage is not absolute, but it weighs in favor of a broader reach that could include direct claims.  If "rights . . . of any stockholder" was meant to refer only to derivative claims, it's a broad and roundabout way of expressing that narrower idea.

*Id.* at 673 (Hamilton, J., concurring) (emphasis added).

In sum, even if the present case involved a damages claim (like the direct/derivative cases on which Plaintiff relies), rather than a demand to exercise the supervisory powers of inspection

---

[9]   Likewise, in *Lubin v. Skow*, 382 F. App'x 866, 871 (11th Cir. 2010) (unpublished), the court made a passing statement that "FIRREA would not be a bar to standing" if the shareholder had asserted a direct claim.  But that position was not advocated by the parties and the statement was pure dicta:  specifically, the court held all of the claims were derivative, not direct, and were barred by FIRREA's succession provision.  *Id.* at 871.  Similarly, in *Barnes v. Harris*, 783 F.3d 1185, 1192 (10th Cir. 2015), *Pareto v. FDIC*, 139 F.3d 696, 699-700 (9th Cir. 1998), and *In re Beach First Nat'l Bancshares, Inc.*, 702 F.3d 772, 777 (4th Cir. 2012), the courts did not consider or address the issue of succession to direct claims, holding simply that FDIC as receiver had succeeded to nearly all of the shareholder's claims, which the court found to be derivative.

and oversight, there is no "rule" in the case law—much less a "uniform" one—that the Conservator's succession to "all rights" of the stockholders counterintuitively includes *only* a single right, the right to pursue derivative claims.

**3.     The Doctrine of Constitutional Avoidance Provides No Basis to Limit the Conservator's Rights**

Plaintiff cannot rely on the doctrine of constitutional avoidance to prevent dismissal or substitution for the simple reason that there is no constitutional issue to avoid here.  *Cf.* Opp. at 18.  Courts have uniformly held that FHFA and Freddie Mac are not "government actors" whose conduct invokes constitutional protections such as the Fifth Amendment's "takings" provision. *See, e.g.*, *Fed. Home Loan Nat'l Mortg. Corp. v. Shamoon*, 922 F. Supp. 2d 641, 644 (E.D. Mich. 2013) (FHFA and Freddie Mac are not "state actors" for purposes of the takings clause.); *Syriani v. Freddie Mac Multiclass Certificates, Series 33365*, No. CV 12-3035, 2012 WL 6200251, at *3-4 (C.D. Cal. July 10, 2012) (same); *Fed. Home Loan Mortg. Corp. v. Gaines*, 589 Fed. App'x 314, 317 (6th Cir. 2014) (same).

By moving to dismiss or substitute, the Conservator is not attempting to assert "ownership" over Plaintiff's stock, or to prevent him from selling his stock.  Opp. 12.  Instead, the Conservator is merely exercising one of the stockholder rights to which it has succeeded— the right to gain access to Freddie Mac's books and records—just as it has exercised other rights of officers, directors, and stockholders, including the right to re-constitute Freddie Mac's board of directors.  The Conservator holds these shareholder rights for the duration of the conservatorship (12 U.S.C. § 4617(b)(2)(A)(i)) and, in any subsequent receivership, the shareholders regain the right to assert claims against the receivership estate.  *See id.* § 4617(b)(2)(K)(i).  Plaintiff does not even begin to explain how a statutory right to inspect corporate books and records could form the basis for any claim for the taking of "private

property . . . without just compensation."  U.S. Const., am. 5.  There is thus no constitutional issue to avoid. [10]

## B.     Plaintiff's Demand to Inspect is also Barred by 12 U.S.C. § 4617(f)

The Court should also dismiss this suit or substitute FHFA as plaintiff for the independent reason that allowing Plaintiff to inspect Freddie Mac's books and records would "restrain or affect" the Conservator's exercise of its powers and functions in direct violation of HERA's anti-injunction bar.  12 U.S.C. § 4617(f).  Plaintiff's books-and-records demand would fundamentally undermine the independence Congress intended for FHFA's conservatorship.

Plaintiff seeks an order permitting him to inspect documents from Freddie Mac for the purpose of policing the Conservator's management of Freddie Mac, from August 17, 2011 through January 19, 2016.  For example, Plaintiff seeks to inspect all documents that constitute FHFA "directives and/or instructions to the Company."  *See* Compl. Ex. A at 3.  Plaintiff also seeks to inspect all board materials concerning "any report, analysis, or evaluation" of Freddie Mac's "solvency or insolvency"; concerning "the declaration and/or payment of dividends"; and concerning "the involvement of FHFA and/or Treasury in the management of [Freddie Mac's] business and affairs."  *Id*. at 2-4 (Compl. Ex. A).

Permitting Plaintiff's investigation into the Conservator's management and operation of Freddie Mac would necessarily "interfere with and potentially usurp precisely the powers granted to the FHFA by HERA."  *Gail C. Sweeney Estate Marital Tr. v. U.S. Treasury Dep't*, 68 F. Supp. 3d 116, 125-26 (D.D.C. 2014) (The decision whether to bring suit arising from the

---

[10]     Moreover, the doctrine of constitutional avoidance counsels that "ambiguous statutory language" should be "construed to avoid serious constitutional doubts."  *FCC v. Fox Tel. Stations, Inc.*, 556 U.S. 502, 516 (2009); *see Gonzales v. Carhart*, 550 U.S. 124, (2007) ("every reasonable construction must be resorted to, in order to save a statute from unconstitutionality").  Because § 4617(b)(2)(A) is clear and unambiguous, the doctrine of constitutional avoidance has no application here.

sale of assets during conservatorship is the type of "decision Congress entrusted to the Conservator in HERA" and protected by Section 4617(f).).  Indeed, numerous decisions substituting FHFA in place of Freddie Mac or Fannie Mae shareholder plaintiffs—including one issued by this Court—recognize that Section 4617(f) bars shareholders from continuing actions in their own names that "would be inconsistent with the Conservator's exercise of its statutory purposes."  *Sadowsky*, 639 F. Supp. 2d at 350.

In particular, as this Court previously held in granting the Conservator's motion to substitute in another shareholder action:

> in this case, the FHFA has properly moved to substitute itself for shareholders who lack standing.  It is acting well within its statutory authority under HERA, and the shareholders do not have any 'rights' that are implicated.  Accordingly, the Court finds that allowing the plaintiffs to remain in this action would violate § 4617(f) as well.

*In re Freddie Mac*, 643 F. Supp. 2d at 799.  Similarly, the District Court for the District Court of Columbia held that "allowing plaintiffs to continue to pursue derivative claims independent of FHFA would require this Court to take action that would 'restrain or affect' FHFA's discretion" in violation of § 4617(f).  *In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, ERISA Litig.*, 629 F. Supp. 2d 1, 4 n.4 (D.D.C. 2009).  The same is true here:  allowing Plaintiff to undertake an investigation of FHFA's performance as Conservator would contravene Congress's decision to leave the operation and oversight of Freddie Mac during conservatorship exclusively in the hands of FHFA.

Plaintiff contends that § 4617(f) only bars interference with FHFA's exercise of business judgment.  *See* Opp. 23-24 (quoting *In re Fed. Nat'l Mortg. Ass'n Secs. Derivative & ERISA Litig.,* 725 F. Supp. 2d 147, 155 (D.D.C. 2010)).  Even if § 4617(f) were so limited—and it is not—that is exactly the sort of interference threatened by Plaintiff's lawsuit.  HERA gives

FHFA, not Plaintiff, the exclusive right to operate Freddie Mac, enter contracts on its behalf, and control any investigation into the actions or operations of Freddie Mac and its Directors, including with respect to contracts such as the Third Amendment.

HERA provides that only the Conservator can "determine[] [what] is in the best interests" of the Enterprises or the Agency, *id.* § 4617(b)(2)(J)(ii), and empowers the Conservator to take any action "necessary to put the regulated entity in a sound and solvent condition" and "appropriate to carry on the business of the regulated entity." *Id.* § 4617(b)(2)(D). Taken together, these provisions ensure that the Conservator, "not . . . Freddie Mac's shareholders," has "broad, sweeping authority over Freddie Mac[]" during conservatorship. *In re Freddie Mac,* 643 F. Supp. 2d at 798 ("Congress made it clear that it left to the FHFA, not to Freddie Mac's shareholders," the decision "how best to manage [Freddie Mac].").

### C. Plaintiff Has Not Identified a "Proper Purpose" for His Request to Inspect Books and Records

Finally, even if Plaintiff could overcome the explicit bar HERA imposes on his proceeding with this suit, the Court should dismiss because Plaintiff has not alleged, and cannot allege, any "proper purpose" supporting his inspection demand. Although Plaintiff does not dispute that Virginia law requires shareholders to allege such a purpose before any inspection can be compelled, Plaintiff contends that this requirement is so relaxed that the barest of allegations may satisfy it. *See* Opp. 21. Plaintiff is wrong.

Plaintiff argues that in evaluating allegations of shareholder's purpose, any "'pass-through' analysis" of "hypothetical claims" a shareholder may pursue is impermissible. *See, e.g.*, Opp. 3, 22. But no speculation as to Plaintiff's purpose or the claims he seeks to investigate is needed here because Plaintiff has described his purpose unambiguously: Plaintiff "seeks [Freddie Mac's] corporate records primarily for the purpose of investigating potential claims

arising from the 'Net Worth Sweep,' a series of enormously unfair transactions between Freddie Mac and its controlling stockholder, the United States Department of the Treasury," which Plaintiff asserts resulted in "potential breaches of fiduciary and statutory duty by Directors and/or officers of Freddie Mac."  Compl. ¶¶  4, 123; *see also, e.g.*, Opp. 1, 8.

By Plaintiff's own description, he seeks access to books and records for the plainly prohibited and therefore improper purpose of pursuing derivative claims.  That is, under Virginia law, "shareholders may assert claims of fiduciary breach against corporate directors ***only*** through shareholder derivative suits."  *Wenzel v. Knight*, No. 3:14-cv-432, 2015 WL 222182, at *3 (E.D. Va. Jan. 14, 2015) (emphasis added); *accord Remora Invs., LLC v. Orr*, 673 S.E.2d 845, 848 (Va. 2009).  According to Plaintiff's own interpretation of HERA's succession provision, he lacks the right to pursue derivative claims during conservatorship.  *See, e.g.,* Opp. 2, 12, 14. Plaintiff also claims that he is investigating putative "direct" claims, including claims for breach of contract and breach of fiduciary duty.  Opp. 21-22.  But such claims are likewise derivative, not direct, claims.  *See Perry Capital*, 70 F. Supp. 3d at 239 n.45 (recognizing that similar contract-based claims involving allegations of wrongdoing related to the Third Amendment and "resulting in *present* damage to the 'value' of the plaintiffs' investment" are derivative, not direct).  In any event, as explained above, HERA has transferred ***all*** shareholder rights to the Conservator, regardless of whether they are characterized as "direct" or "derivative."

Plaintiff wrongly contends that Virginia law sets a "low bar" that permits shareholders to inspect corporate books and records even for the sole purpose of investigating claims they are foreclosed from bringing.  *See* Opp. 21.  The requirement that a shareholder allege a proper purpose is not a low hurdle.  Instead, the right to inspect is an "extraordinary remedy."  *Bank of Giles Cty. v. Mason*, 98 S.E.2d 905, 908 (Va. 1957).  Virginia law does "not . . . grant[] a roving

commission" to shareholders "to pore at will through the books and records of the corporation."
*Id.*

Plaintiff cites no authority to support his argument—and contrary to it, he concedes that
"a stockholder pursues a proper purpose [only if] his request is designed 'to protect his rights as
a shareholder.'"  Opp. 21 (quoting *Retail Prop. Inv'rs, Inc. v. Skeens*, 471 S.E. 2d 181,183 (Va.
1996)).  The Court in *Skeens* held that the shareholder had failed to satisfy his burden of showing
"that he seeks such records for a proper purpose, meaning that he is acting in good faith to
protect his rights as a shareholder and that the relief he seeks will not adversely affect the
corporation's interests."  *Retail Prop. Inv'rs, Inc.*, 471 S.E. 2d at 183.  *See also United Techs.
Corp. v. Treppel*, 109 A.3d 553, 559 n.31 (Del. 2014) (shareholder inspections cannot be
permitted where they are intended to investigate claims the shareholder lacks standing to bring
because, in such instances, the shareholder is *not* pursuing his "interest as a stockholder"
(quoting *West Coast Mgmt. & Capital LLC v. Carrier Access Corp.*, 914 A.2d 636, 645-46 (Del.
Ch. 2006))).

Plaintiff's final argument that he "may be entitled" to bring derivative claims where
"FHFA and/or Treasury may have a conflict of interest" is also incorrect, and it does not change
the conclusion that there is no proper purpose to support his inspection demand.  Opp. 22
HERA contains no "conflict-of-interest" exception.  As the court in *Perry Capital* explained in
considering claims brought by Enterprise shareholders challenging the Third Amendment,
adoption of a conflict of interest exception to § 4617(b)(2)(A)(i) "[w]ould [c]ontravene the
[p]lain [l]anguage of the [s]tatute" which provides "no [conflict-of-interest] qualification for its
bar."  70 F. Supp. 3d at 230-31.  Regardless, Plaintiff makes no attempt to identify any purported
conflict.

In sum, because Plaintiff is precluded from pursuing any of the claims he purports to investigate here, he cannot allege a proper purpose to support his demand to inspect books and records.

## CONCLUSION

For the foregoing reasons, the Court should either dismiss this suit or, in the alternative, substitute FHFA for the current Plaintiff.

Dated:  July 29, 2016                                   Respectfully submitted,


s/ Ian S. Hoffman                                      s/ Michael J. Ciatti
Ian S. Hoffman (Va. Bar No. 75002)                     Michael J. Ciatti (Va. Bar No. 40607)
Howard N. Cayne*                                       Taylor T. Lankford (Va. Bar. No. 80599)
Asim Varma*                                            Graciela M. Rodriguez*
David B. Bergman*                                      Merritt E. McAlister*
ARNOLD & PORTER LLP                                    KING & SPALDING LLP
601 Massachusetts Avenue NW                            1700 Pennsylvania Avenue NW, Ste. 200
Washington, D.C.  20001                                Washington, D.C.  20006
Telephone: (202) 942-5000                              Telephone: (202) 737-0500
Facsimile: (202) 942-5999                              Facsimile: (202) 626-3737
Ian.Hoffman@aporter.com                                tlankford@kslaw.com
Howard.Cayne@aporter.com                               mciatti@kslaw.com
Asim.Varma@aporter.com                                 gmrodriguez@kslaw.com
David.Bergman@aporter.com                              mmcalister@kslaw.com

*Attorneys for Federal Housing Finance Agency*         *Attorneys for Defendant Federal Home Loan*
                                                       *Mortgage Corporation*


*Admitted pro hac vice*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that, on July 29, 2016, a true and correct copy of the foregoing was filed electronically using the Court's CM/ECF system, causing a true and correct copy to be served on all counsel of record.

<u>/s/ Ian S. Hoffman</u>
Ian S. Hoffman  (Va. Bar No. 75002)
ARNOLD & PORTER LLP
601 Massachusetts Avenue NW
Washington, D.C.  20001
Telephone: (202) 942-5000
Facsimile: (202) 942-5999
Ian.Hoffman@aporter.com

*Attorney for Federal Housing Finance Agency*