IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

TIMOTHY J. PAGLIARA,                )
                                     )
    Plaintiff,                       )
                                     )
          v.                         )   Case No. 1:16-cv-337 (JCC/JFA)
                                     )
FEDERAL HOME LOAN MORTGAGE           )
CORPORATION,                         )
                                     )
    Defendant.                       )

## M E M O R A N D U M   O P I N I O N

The matter before the Court questions whether a
preferred stockholder retains the right to inspect Freddie Mac's
corporate records despite a conservator succeeding to "all
rights, titles, powers, and privileges . . . of any
stockholder . . . with respect to [Freddie Mac] and the assets
of [Freddie Mac]."  The Court concludes that the statutory
transfer of power to the conservator destroyed the stockholder's
right to inspect corporate records.  Accordingly, the Court will
dismiss Plaintiff's Complaint.

## I.    Background

The Federal Home Loan Mortgage Corporation, or
"Freddie Mac," is a federally chartered corporation created by
Congress, but owned by stockholders.

Plaintiff Timothy J. Pagliara ("Pagliara" or "Plaintiff") is the beneficial owner of approximately 346,000 shares of Freddie Mac's junior preferred stock, which he purchased in 2009.  Pagliara is also the founder of "a coalition of private investors from all walks of life, committed to the preservation of shareholder rights for those invested in Freddie Mac and Fannie Mae."  (Compl. [Dkt. 1-1] ¶ 22.)  Pagliara brings this lawsuit seeking to inspect corporate records in his individual capacity as a beneficial owner of Freddie Mac preferred stock.

To understand the present dispute, it is necessary to discuss Freddie Mac's origins and recent history.  Congress created Freddie Mac in 1970 to bring competition to the market for secondary mortgages.  Both Freddie Mac and its sister corporation, "Fannie Mae," purchase mortgages originated by banks and bundle them into mortgage-backed securities to be sold on the open market.  From 2000 through 2006, Freddie Mac was profitable and declared dividends on preferred and common stock.  As a result of the national financial crisis, however, Freddie Mac recorded losses in the third and fourth quarters of 2007 and the first two quarters of 2008.

As a response to the financial crisis, Congress passed the Housing and Economic Recovery Act of 2008 ("HERA").[1]  HERA created the Federal Housing Finance Authority ("FHFA") to regulate Freddie Mac and Fannie Mae and granted the FHFA authority to place either entity in conservatorship.  FHFA did just that in September 2008.[2]  As conservator, FHFA acquired broad authority from HERA to operate Freddie Mac, including the power to "take such action as may be (i) necessary to put [Freddie Mac] in a sound and solvent condition; and (ii) appropriate to carry on the business of [Freddie Mac] and preserve and conserve the assets and property of [Freddie Mac]."  12 U.S.C. § 4617(b)(2)(D).  FHFA also received the authority to "operate [Freddie Mac] with all the powers of the shareholders, the directors, and the officers of the regulated entity and conduct all business of [Freddie Mac]."  *Id.* § 4617(b)(2)(B)(i).  To execute that power, HERA mandates that FHFA shall

---

[1]     Pub. L. No. 110-289, 122 Stat. 2654 (codified as amended at 12 U.S.C. § 4501, *et seq.*).

[2]     Persuasive authority indicates that the management of Fannie and Freddie consented to the conservatorship.  *See Judicial Watch, Inc. v. Fed. Hous. Fin. Agency*, 646 F.3d 924, 926 (D.C. Cir. 2011) ("[W]ith consent of management of Fannie and Freddie, the FHFA placed both into conservatorship.").  At oral argument, however, counsel for Pagliara was not able to confirm this fact.  (Tr. [Dkt. 40] at 15.)  Accordingly, for purposes of this motion only, the Court accepts the Complaint's characterization that "FHFA appointed itself as conservator of Freddie Mac and Fannie Mae."  (Compl. ¶¶ 55, 56.)

"immediately succeed to (i) all rights, titles, powers, and privileges of [Freddie Mac], and of any stockholder, officer, or director of [Freddie Mac] with respect to [Freddie Mac] and the assets of [Freddie Mac]." *Id.* § 4617(b)(2)(A)(i). HERA even purports to insulate FHFA's operation of Freddie Mac from judicial intervention by stating that, except in limited circumstances, "no court may take any action to restrain or affect the exercise of powers or functions of [FHFA] as a conservator." *Id.* § 4617(f).

The day after FHFA became conservator in 2008, FHFA caused Freddie Mac to enter into a senior preferred stock purchase agreement with the U.S. Department of the Treasury. Under the agreement, Treasury purchased one million shares of newly created senior preferred Freddie Mac stock with a liquidation preference of $1 billion. In exchange, Freddie Mac received the right to withdraw up to $100 billion from Treasury. Between 2008 and 2012, Freddie Mac withdrew $71.3 billion, raising Treasury's liquidation preference in Freddie Mac to $72.3 billion. By 2012, Freddie Mac showed signs of financial growth. According to Pagliara, Freddie Mac's recovery threatened Treasury's ability to control and extract dividends from Freddie Mac. At the same time, the national debt ceiling was constraining Treasury's reserves. Those concerns allegedly

4

caused Treasury to decide "to take money from Freddie Mac and Fannie Mae stockholders" by entering into a "Third Amendment" to the senior preferred stock purchase agreement.  (Compl. ¶¶ 91-92.)

The Third Amendment to the stock purchase agreement contains a "Net Worth Sweep" provision, which entitles Treasury to receive a quarterly dividend from Freddie Mac in the amount of Freddie Mac's entire net worth, except for only a small capital reserve.  Freddie Mac has paid Treasury dividends of approximately $74.4 billion since 2013 under this Net Worth Sweep arrangement.  During that same time, Freddie Mac has not paid any dividends to junior preferred stockholders, like Pagliara.

In January 2016, Pagliara sent a "Demand" letter to Freddie Mac's board of directors seeking to enforce his stockholder right to inspect Freddie Mac's corporate books and records.  (*See* Demand [Dkt. 1-1] at 40-52.)[3]  Freddie Mac's bylaws grant stockholders a right to inspect certain corporate

---

[3]     Page numbers within citations to exhibits refer to the pagination assigned by the Electronic Case Management system. Page numbers within citations to parties' legal memoranda refer to the pagination assigned by those documents.

records when specific conditions are met.[4]  The bylaws also obligate Freddie Mac to "follow the corporate governance practices and procedures of the law of the Commonwealth of Virginia, including without limitation the Virginia Stock Corporation Act," to the extent doing so is not inconsistent with Freddie Mac's "enabling legislation and other Federal law, rules, and regulations."  (*See* Bylaws § 11.3(a).)  Pagliara's preferred stock certificates contain a similar reference to Virginia law.[5]  The Virginia Stock Corporation Act grants stockholders a right to inspect corporate records that is

---

[4]     *See* Federal Home Loan Mortgage Corporation Bylaws § 6.1 (July 7, 2016) [hereinafter Bylaws], http://www.freddiemac.com/governance/pdf/bylaws.pdf.

[5]     In relevant part, the preferred stock certificate states as follows:

> This Certificate and the respective rights and obligations of Freddie Mac and the holders of the Non-Cumulative Preferred Stock with respect to such Non-Cumulative Preferred Stock shall be construed in accordance with and governed by the laws of the United States, provided that the law of the Commonwealth of Virginia shall serve as the federal rule of decision in all instances except where such law is inconsistent with Freddie Mac's enabling legislation, its public purposes or any provision of this Certificate.

(Compl. ¶ 30.)

substantively identical to the right granted in Freddie Mac's bylaws.[6]  *See* Va. Code §§ 13.1-770, -771.

Pagliara sought to inspect Freddie Mac's records "primarily for the purpose of investigating potential claims arising from the 'Net Worth Sweep.'"  (Compl. ¶ 4; *see also id.* ¶ 43 ("Stockholder is investigating potential claims with respect to the Net Worth Sweep and other conduct of Freddie Mac, the Board, FHFA, and Treasury, as further described below.").) The Demand explained Pagliara's belief that the Net Worth Sweep potentially gives rise to several claims against FHFA, Freddie Mac's directors, and Treasury.  Principal among those claims are lawsuits against Freddie Mac's directors for breaches of fiduciary duties of care and loyalty, statutory duties governing when dividends may issue, and corporate waste, among others. The Demand also strongly suggested that Freddie Mac's directors may be personally liable for those violations.[7]  Pagliara reiterated those claims in a "Dividend Letter" sent on the same

---

[6]     Neither party argued that a substantive difference exists between the inspection right created by the Bylaws and the Virginia Stock Corporation Act.  (*See* Def.'s Mem. in Supp. [Dkt. 34] at 11 n.4 (noting the two sources of the inspection right but not identifying any distinction between the two); Pl.'s Mem. in Opp'n [Dkt. 36] at 19 n.6.)

[7]     For example, after describing his belief that the Net Worth Sweep violates Virginia law, Pagliara wrote that "[c]ourts applying Virginia law have affirmed that directors may be held personally liable for authorizing a distribution under such circumstances."  (Demand at 49; *see also id.* at 46-47.)

day and urging the directors to "[e]xercise your authority under Virginia law to cause [Freddie Mac] to immediately stop declaring and paying dividends to Treasury."  (Dividend Letter [Dkt. 1-1] at 78-84.)

Freddie Mac's board did not respond to Pagliara's Demand.  Instead, on January 28, 2016, FHFA sent Pagliara a letter explaining that Freddie Mac's directors serve on behalf of FHFA and do not owe any fiduciary duties to stockholders. (*See* Response Letter [Dkt. 1-1] at 69.)  Thus, according to FHFA, the state law duties Pagliara discussed in his Demand and Dividend Letter "are simply not applicable."  (*Id.*)

About six weeks after receiving FHFA's response, Pagliara filed suit in a Virginia circuit court seeking an order under Virginia Code § 13.1-773[8] to permit him to inspect Freddie Mac's corporate books and records.  At the same time, Pagliara filed a substantively identical lawsuit in Delaware seeking to

---

[8]      In relevant part, this section of the Virginia Stock Corporation Act states as follows:

> If a corporation does not within a reasonable time allow a shareholder to inspect and copy any other record, the shareholder who complies with subsections C and D of § 13.1-771 may apply . . . for an order to permit inspection and copying of the records demanded.  The court shall dispose of an application under this subsection on an expedited basis.

Va. Code § 13.1-773(B).

inspect Fannie Mae's records. *See Pagliara v. Fed. Nat'l Mortg. Assoc.*, No. 1:16-cv-193 (D. Del. filed Mar. 25, 2016).

Freddie Mac removed the case to this Court pursuant to 12 U.S.C. § 1452(f),[9] which grants Freddie Mac the right to remove "any civil or other action, case or controversy in a court of a State, or in any court other than a district court of the United States, to which [Freddie Mac] is a party," provided Freddie Mac removes the action "before the trial." *Id.* § 1452(f)(3). The Court then granted a brief stay to determine whether the Judicial Panel on Multidistrict Litigation would consolidate this matter with other pending cases.[10] When the case was returned to active status, Freddie Mac moved to dismiss Pagliara's complaint for lack of standing and failure to state a claim upon which relief may be granted. In the alternative, FHFA moved to be substituted as plaintiff in this case. These motions have been fully briefed and argued and are now ripe for disposition.

## II.    Standard of Review

Defendant challenges Plaintiff's standing to bring this suit pursuant to Federal Rule of Civil Procedure 12(b)(1).

---

[9]     Section 1452(f)(2) also provides this Court original jurisdiction over this matter.
[10]     *See Pagliara v. Fed. Home Loan Mortg. Corp.*, No. 1:16-cv-337, 2016 WL 2343921 (E.D. Va. May 4, 2016).

Defendant raises a facial challenge to Pagliara's standing, arguing that the Complaint fails to allege facts upon which Pagliara has standing, thereby precluding the Court's subject matter jurisdiction.  When reviewing a facial challenge to subject matter jurisdiction, courts must take the facts alleged within the complaint as true.  *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

Defendant also raises a 12(b)(6) challenge to whether Pagliara has sufficiently alleged his right to inspect corporate records under the Virginia Stock Corporation Act.  This motion is reviewed under the same standard described above.  *See id.* Accordingly, the court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor.  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted).  The court does not, however, assume the veracity of "labels and conclusions," *Ashcroft v. Iqbal*, 556 U.S. 662, 679-81 (2009), or legal conclusions drawn from the facts alleged, *Adcock v. Freightliner LLC*, 550 F.3d 369, 374 (4th Cir. 2008).

### III.    Analysis

Before discussing the substance of parties' arguments, the Court must address an issue of taxonomy.  Defendant argues

throughout its briefing that the Court should dismiss this case because Pagliara lacks the "right" to inspect Freddie Mac's corporate records.  Defendant frames this argument as a 12(b)(1) standing challenge to Pagliara's ability to allege an injury-in-fact or because Pagliara attempts to enforce a right that is not his own.  (*See* Def.'s Mem. in Supp. at 4 (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 474 (1982) ("[T]he plaintiff generally must assert his own legal rights and interests . . . ."); *Burke v. City of Charleston*, 139 F.3d 401, 405 (4th Cir. 1998) (discussing constitutional requirement of an injury-in-fact)).) Defendant likely styled its motion under 12(b)(1) because many courts have proceeded under the standing rubric when discussing whether HERA or a substantively similar statute destroyed stockholders' standing to bring a derivative lawsuit on behalf of a corporation.  In the present context, however, Defendant's argument is better framed as a merits challenge to the existence of the right Pagliara asserts, rather than a question of his standing to pursue that right.

It is well recognized that a merits inquiry into the existence of a right and the standing inquiry into the allegation of an injury-in-fact are often difficult to separate. *See* 13A Charles Alan Wright & Arthur R. Miller, *Federal Practice*

*and Procedure* § 3531.4 (3d ed.) ("The question whether there is an injury quickly becomes blended with the question whether to recognize the asserted interest that has in fact been impaired.").  Fortunately, the Fourth Circuit has provided guidance on separating those inquiries.  In *Pitt County v. Hotels.com, L.P.*, 553 F.3d 308 (4th Cir. 2009), a district court dismissed a county's case for lack of standing after concluding that the county lacked the statutory right to tax online hotel retailers.  Under the district court's reasoning, the county's lack of a right to tax meant the county suffered no injury when online retailers failed to pay county taxes.  The Fourth Circuit criticized that reasoning as "improperly conflat[ing] the threshold standing inquiry with the merits of the County's claim."  *Id.* at 312.  The court noted that a plaintiff "need not prove the merits of [its] case in order to demonstrate that [it] ha[s] Article III standing."  *Id.* (alteration in original) (quoting *Am. Library Ass'n v. FCC*, 401 F.3d 489, 493 (D.C. Cir. 2005)).  Instead, a "district court has jurisdiction if 'the right of the [plaintiffs] to recover under their complaint will be sustained if the [applicable laws] are given one construction and will be defeated if they are given another.'"  *Id.* (alternation in original) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998)).  Applying that standard,

12

the Fourth Circuit concluded that the county's lack of a right
to tax defeated its claim on the merits, but not its standing to
allege a right to collect taxes to begin with.  "To hold
otherwise would reduce all merits inquiries in cases of this
type into standing inquiries." *Id*.  The same is true here.

        If Pagliara's interpretation of HERA is correct, then
he unquestionably seeks to assert his own right as a stockholder
to inspect Freddie Mac's corporate records.  Thus, if Pagliara's
interpretation prevails, Freddie Mac caused him direct injury by
denying his inspection demand, which this Court could remedy by
ordering Freddie Mac to permit inspection.  That satisfies
Pagliara's obligation regarding standing.  Only if the Court
accepts Defendant's interpretation of HERA would Pagliara no
longer possess the inspection right he seeks to enforce.  As in
*Pitt County*, the question of the existence of the right at issue
goes to the merits of Pagliara's claim, not to his
jurisdictional allegations.  Accordingly, as in *Pitt County*, the
Court will review parties' arguments regarding Pagliara's
inspection right within the framework of 12(b)(6), rather than a
12(b)(1) challenge to the Court's subject matter jurisdiction.

A.         Pagliara Lacks the Right to Inspect Freddie Mac's
           Corporate Books and Records

Turning now to the parties' arguments, Defendant

contends that the Court should dismiss this Complaint for

records inspection because Pagliara no longer possesses any

right to inspect Freddie Mac's records.  Specifically, Defendant

argues that HERA transferred Pagliara's inspection right to FHFA

when FHFA became Freddie Mac's conservator.  Defendant

principally relies upon 12 U.S.C. § 4617(b)(2)(A)(i), which

declares that FHFA, upon appointment as conservator, immediately

succeeds to "all rights, titles, powers, and privileges . . . of

any stockholder" of Freddie Mac.

Pagliara interprets HERA far more narrowly.  Pagliara

emphasizes that § 4617(b)(2)(A)(i) only transfers stockholders'

rights "with respect to the regulated entity and the assets of

the regulated entity."  According to Pagliara, that phrase means

HERA merely transferred a stockholder's right to bring a

derivative lawsuit[11] on behalf of Freddie Mac.  In Pagliara's

view, a stockholder retains all other rights, including any

right he might assert through a direct lawsuit.  Any other

_____

[11]        "A derivative action is an equitable proceeding in
which a shareholder asserts, on behalf of the corporation, a
claim that belongs to the corporation rather than the
shareholder." *Simmons v. Miller*, 544 S.E.2d 666, 674 (Va.
2001).  Actions for "injuries to a corporation" are archetypal
derivative actions.  *Id.*

interpretation, Pagliara contends, would implicate the Fifth Amendment's Takings Clause.  Pagliara draws that derivative-versus-direct distinction from cases finding § 4617(b)(2)(A)(i) and similar language in the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"),[12] divest stockholders of standing to pursue derivative lawsuits on behalf of the corporation, but do not divest stockholders of standing to pursue direct lawsuits to remedy their own monetary injuries.

As described below, the Court agrees with Defendant that HERA divested Freddie Mac stockholders of the right to inspect corporate records.  Accordingly, the Court will dismiss this case.

The existence or nonexistence of Pagliara's right to inspect corporate records is a question of statutory interpretation.  As such, the Court must begin with the relevant statutory language.  *See King v. Burwell*, 759 F.3d 358, 368 (4th Cir. 2014).  "[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its

_____

[12]    FIRREA states that the FDIC "shall, as conservator or receiver, and by operation of law, succeed to (i) all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution."  12 U.S.C. § 1821(d)(2)(A)(i).

terms." *Crespo v. Holder*, 631 F.3d 130, 133 (4th Cir. 2011)

(quoting *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004)).

The Court must enforce the statute as written because the

statute has a plain meaning that is not absurd.

The relevant statutory language appears in 12 U.S.C.

§ 4617(b)(2)(A)(i) and states the following:

> The Agency shall, as conservator or
> receiver, and by operation of law,
> immediately succeed to (i) all rights,
> titles, powers, and privileges of the
> regulated entity, and of any stockholder,
> officer, or director of such regulated
> entity with respect to the regulated entity
> and the assets of the regulated entity.

As many courts have recognized, the language "all rights,

titles, powers, and privileges . . . of any stockholder" is

extremely broad and evidences Congress's intent "to shift as

much as possible to the FHFA." *In re Fed. Nat'l Mortg. Assoc.*

*Sec., Derivative, & ERISA Litig.*, 629 F. Supp. 2d 1, 3 (D.D.C.

2009); *Kellmer v. Raines*, 674 F.3d 848, 851 (D.C. Cir. 2012)

(noting by reference to FIRREA that "nothing was missed"); *Perry*

*Capital LLC v. Lew*, 70 F. Supp. 3d 208, 225 (D.D.C. 2014)

(discussing the "extraordinary breadth of HERA's statutory grant

to FHFA"); *Esther Sadowsky Testamentary Trust v. Syron*, 639 F.

Supp. 2d 347, 350 (S.D.N.Y. 2009) ("[U]nder the plain language

of HERA, 'all rights, titles, powers, and privileges' of Freddie

Mac's shareholders are now vested in the FHFA.").  In other

words, the language means what it plainly says; HERA transferred "all rights previously held by Freddie Mac's shareholders."  *In re Fed. Home Loan Mortg. Corp. Derivative Litig.*, 643 F. Supp. 2d 790, 795 (E.D. Va. 2009), *aff'd sub nom. La. Mun. Police Emps. Ret. Sys. v. Fed. Hous. Fin. Agency*, 434 F. App'x 188 (4th Cir. 2011).

The only limiting language within § 4617(b)(2)(A)(i) that Pagliara identifies is the clause "with respect to the regulated entity and the assets of the regulated entity." Pagliara interprets this phrase to mean FHFA succeeded to *only* the right to bring a derivative lawsuit.  Pagliara derives this argument from courts that have interpreted HERA[13] and analogous language in FIRREA[14] to leave undisturbed a stockholder's standing to pursue a direct lawsuit against a corporation.  In particular, Pagliara relies upon Judge Easterbrook's discussion of whether a stockholder of banks under FDIC conservatorship retained standing to bring a direct lawsuit in *Levin v. Miller*, 763 F.3d 667 (7th Cir. 2014).  Judge Easterbrook wrote that

---

[13]    *See, e.g., Perry Capital*, 70 F. Supp. 3d at 226; *In re Fed. Home Loan Mortg. Corp.*, 643 F. Supp. 2d at 795, *aff'd* 434 F. App'x 188.
[14]    *See, e.g., Barnes v. Harris*, 783 F.3d 1185, 1193 (10th Cir. 2015); *Levin v. Miller*, 763 F.3d 667, 672 (7th Cir. 2014); *In re Beach First Nat'l Bancshares, Inc.*, 702 F.3d 772, 780 (4th Cir. 2012); *Lubin v. Skow*, 382 F. App'x 866, 870 (11th Cir. 2010); *Pareto v. FDIC*, 139 F.3d 696, 699-700 (9th Cir. 1998).

17

FIRREA transferred "claims 'with respect to . . . the assets of the institution," meaning only those claims investors "would pursue derivatively" on behalf of the corporation. *Id.* at 672. Pagliara believes that interpretation is determinative here because the right to inspect corporate records is enforceable through a direct lawsuit, not a derivative lawsuit. *See* Principles of Corporate Governance § 7.01 cmt. c (listing "actions to inspect corporate books and records" as an action "most courts have properly considered" as direct).

The derivative-versus-direct distinction discussed in the cases Pagliara cites, however, has little bearing on the issue in this case. The "right" at issue in the cases Pagliara cites was the right to bring a claim on behalf of a corporation, i.e., derivative standing. *See, e.g.*, *Levin*, 763 F.3d at 672 (addressing whether FIRREA transferred "all *claims* held by any stockholder" (emphasis added)); *In re Beach First Nat'l Bancshares, Inc.*, 702 F.3d 772, 777 (4th Cir. 2012) ("The Trustee does not dispute that derivative claims fall within the powers and privileges of a stockholder of a financial institution 'with respect to the institution' as contemplated by § 1821(d)(2)(A)(i)."); *In re Fed. Home Loan Mortg. Corp. Deriv. Litig.*, 643 F. Supp. 2d at 795 (discussing the "right to sue derivatively"). The courts were discussing a stockholder's

18

right to bring a derivative suit as compared to a stockholder's
standing to bring a lawsuit to remedy his own direct injuries.
In that context, the derivative-versus-direct distinction is
informative, because standing to bring a lawsuit to remedy a
personal injury is not easily categorized as a right with
respect to the corporation.  The present case, however,
questions whether a stockholder possesses the underlying right
that he seeks to enforce through a direct lawsuit.  In other
words, the issue here is not whether Pagliara may pursue his
right through a direct lawsuit, but whether he possesses the
right he believes was infringed.  The cases Pagliara cites do
not bear on that issue.

Transferring the derivative-versus-direct distinction
from the context in which it arose to a completely different
question of whether an underlying right even exists would have
obvious adverse implications.  There are many stockholder
rights, in addition to the right to inspect records, that are
arguably enforceable through a direct lawsuit.  For example,
before the conservatorship Freddie Mac's common stockholders
possessed the right to elect directors, Va. Code § 13.1-675;
Bylaws § 3.7(a), to seek removal of directors, § 13.1-680;
Bylaws § 4.16, to petition a court to force Freddie Mac to hold
an annual meeting, § 13.1-656; Bylaws § 3.1(b), and to call a

19

special meeting, § 13.1-655(A)(1); Bylaws § 3.2(a).  *See*

Principles of Corporate Governance § 7.01 cmt. c (listing

"actions to enforce the right to vote," and "actions to require

the holding of a shareholders' meeting" as "properly considered"

as direct actions).  If the Court were to adopt Pagliara's

derivative-versus-direct distinction wholesale, the Court must

also likely accept that common stockholders continue to possess

those other rights enforceable through a direct lawsuit.  To

read the above list of rights is to understand that a

stockholder's exercise of at least some of those rights would

directly conflict with HERA's clear intention to transfer as

governance authority to FHFA as possible.  That undesirable

consequence supports the Court's conclusion that the derivative-

versus-direct distinction should remain confined to the limited

context that fostered its creation, namely inquiries into a

stockholder's standing to pursue a claim.

    The statutory context of 12 U.S.C. § 4617(b)(2)(A)(i)

also cuts against Pagliara's interpretation.  *Cf. King v.*

*Burwell*, 759 F.3d 358, 368 (2014) ("[T]he meaning—or ambiguity—

of certain words or phrases may only become evident when placed

in context." (citation omitted)).  HERA grants an extraordinary

amount of authority to FHFA as conservator, including the power

to "operate the regulated entity with all the powers of the

shareholders, the directors, and the officers of the regulated entity and conduct all business of the regulated entity," 12 U.S.C. § 4617(b)(2)(B)(i), to take any actions "appropriate to carry on the business of the regulated entity and preserve and conserve the assets and property of the regulated entity," § 4617(b)(2)(D)(ii), and to immediately succeed to "title to the books, records, and assets of any other legal custodian of" Freddie Mac, § 4617(b)(2)(A)(ii). FHFA also received all "incidental powers as shall be necessary to carry out" its enumerated powers. § 4617(b)(2)(J)(i). Furthermore, HERA purports to prohibit courts from taking "any action to restrain or affect the exercise of powers or functions of the Agency as a conservator." § 4617(f). In light of that substantial grant of authority, one would expect a limitation of HERA's power transfer to be artfully stated. But as Judge Hamilton recognized in *Levin v. Miller*, "[i]f 'rights . . . of any stockholder' was meant to refer only to derivative claims, it's a broad and roundabout way of expressing that narrower idea." 763 F.3d at 673 (Hamilton, J., concurring). Indeed, it would strain any reasonable interpretation of HERA to conclude that the phrase "with respect to the regulated entity and [its] assets" carves out a stockholder's right to inspect documents

21

from the broad transfer of "all rights, titles, powers, and privileges . . . of any stockholder."

In light of the foregoing, the Court will not rely upon a distinction that was adopted in a completely different interpretive context, that has absurd implications in the present context, and that runs counter to HERA's context and intent.  Instead, the Court will apply the plain meaning of "with respect to."  *Cf. Levin*, 763 F.3d at 673 (Hamilton, J., concurring) (finding it "not obvious" that "with respect to" "must be interpreted so narrowly").  "With respect to" plainly means "about or concerning" or "relating to."  *See, e.g.*, *Dan's City Used Cars, Inc. v. Pelkey*, 133 S. Ct. 1769, 1778-79 (2013) (interpreting "with respect to" to mean "concerning" in the context of the Federal Aviation Authorization Act of 1994 ("FAAA")); *Cal. Tow Truck Ass'n v. City & Cty. of San Francisco*, 807 F.3d 1008, 1021 (9th Cir. 2015) ("[T]he phrase 'with respect to' is generally understood to be synonymous with the phrase[] 'relating to.'") (interpreting FAAA); *Merriam Webster Dictionary*, *available at* www.merriam-webster.com/dictionary/with%respect%20to (defining "with respect to" as meaning "about or concerning" or "in relation to").

The above definition points persuasively to the conclusion that a stockholder's right to inspect corporate

22

records is a stockholder right with respect to Freddie Mac or its assets.  To assert that right, the individual must be a stockholder and must have a purpose of protecting his rights as a stockholder.  *See Retail Prop. Investors, Inc. v. Skeens*, 471 S.E.2d 181, 183-84 (Va. 1996).  Thus, the right is conferred by stock ownership and relates to Freddie Mac by requiring Freddie Mac to disclose its own records, which expressly concern its own operation.  As such, that right was transferred to FHFA upon its appointment as conservator.  Because Pagliara no longer possesses the right to inspect, the Court must dismiss this Complaint.

Pagliara does not persuade the Court that the above interpretation poses a serious risk of implicating the Fifth Amendment's Takings Clause.[15]  As an initial point, the Court need not resort to the interpretive cannon of constitutional avoidance here because HERA is not ambiguous within the context of this case.  *See Gonzales v. Carhart*, 550 U.S. 124, 154 (2007) (noting the "canon of constitutional avoidance does not apply if a statute is not 'genuinely susceptible to two constructions'").  Furthermore, Pagliara's brief reference to constitutional avoidance fails to demonstrate any serious Fifth Amendment

---

[15]      The Takings Clause states that "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V.

concern.  *Cf. Clark v. Martinez*, 543 U.S. 371, 382 (2005)
(applying interpretative canon to avoid "serious" constitutional
doubts or threats).  The only case parties identify that has
considered a Fifth Amendment challenge regarding HERA concluded
that stockholders did not have the property interest they sought
to enforce through the Fifth Amendment.  *See Perry Capital LLC
v. Lew*, 70 F. Supp. 3d 208, 230 (D.D.C. 2014).  Pagliara's brief
argument fails to address how the Fifth Amendment claim he
envisions would avoid the same fate.[16]  Accordingly, the Court
will not adopt an unreasonable interpretation of a plain statute
to avoid Pagliara's unsubstantiated constitutional concerns.

          To summarize, HERA's plain language evidences
Congress's intent to transfer as much power as possible to the
FHFA when acting as Freddie Mac's conservator.  Within that
context, the Court may only reasonably read the transfer of "all
rights, titles, powers, and privileges" of "any stockholder
. . . with respect to the regulated entity and the assets of the
regulated entity" to include a stockholder's right to inspect
Freddie Mac's corporate records.  Accordingly, the Court must

---

[16]     The only property interest Pagliara identifies in his
memoranda is the right to bring a direct lawsuit.  (*See* Pl.'s
Mem. in Opp'n at 18.)  The Court's application of HERA here does
not affect that right.

dismiss this case because Pagliara does not possess the right he seeks to enforce.

B.        Pagliara Lacks a Proper Purpose for Inspecting Freddie Mac's Corporate Books and Records

Even if Pagliara did retain the right to inspect corporate records, he has not satisfied the statutory requirements for exercising that right in this case.  Virginia Code § 13.1-771(D) governs when a stockholder may inspect the records that Pagliara seeks.[17]  Under that section, a stockholder may inspect and copy records only if (1) he has been a stockholder for at least six months preceding his inspection demand or owns at least five percent of all outstanding shares; (2) his demand "is made in good faith and for a proper purpose"; (3) he describes his purpose and the records he desires to inspect with "reasonable particularity"; and (4) "[t]he records are directly connected" to his purpose.  Va. Code § 13.1-771(D).

---

[17]      A stockholder need not satisfy the requirements of § 13.1-771(D) to inspect records listed in § 13.1-770(E).  The records Pagliara seeks do not fall into the categories listed in § 13.1-770(E).  Accordingly, he must satisfy the more difficult showing under § 13.1-771(D).  Some of the records Pagliara seeks are not subject to inspection under either statute, specifically records listed in Pagliara's demand under subsections I(3), I(11), and I(14).  (*See* Demand [Dkt. 1-1] at 42-43.)  Freddie Mac's Bylaws § 6.1(a)-(b) similarly would not allow inspection into those records.  Thus, the Court would not grant Pagliara's motion to inspect the records listed above, even if Pagliara's Complaint was not otherwise defective.

25

Freddie Mac's bylaws impose the same requirements. *See* Bylaws
§ 6.1(b). The stockholder bears the burden of demonstrating
those elements. *See Retail Prop. Investors, Inc. v. Skeens*, 471
S.E.2d 181, 184 (Va. 1996).

The only element challenged in this motion to dismiss
is whether Pagliara made his demand for a proper purpose.
According to the Virginia Supreme Court, "proper purpose" means
a shareholder is "acting in good faith to protect his rights as
a shareholder and that the relief he seeks will not adversely
affect the corporation's interests." *Id.* at 183; *see also Bank
of Giles Cty. v. Mason*, 98 S.E.2d 905, 908 (Va. 1957). When
evaluating a shareholder's purpose, it is appropriate to
consider his primary purpose, rather than some secondary or
ulterior purpose.[18]

---

[18] When considering demand requests involving multiple
purposes, persuasive authorities interpreting similar inspection
statutes look to the stockholder's primary purpose. *See, e.g.*,
*CM&M Grp., Inc. v. Carroll*, 453 A.2d 788, 792 (Del. 1982)
("While the Court may discount a secondary or ulterior purpose,
the primary purpose must not be adverse to the best interests of
the corporation."); *Abdalla v. Qadorh-Zidan*, 913 N.E.2d 280, 287
(Ind. Ct. App. 2009) ("[T]he general rule applied to the court's
review of inspection statutes has been that the primary purpose
of the inspection must not be one that is adverse to the best
interests of the corporation."); *Pershing Square, L.P. v.
Ceridian Corp.*, 923 A.2d 810, 818 (Del. Ch. 2007) (looking to
whether "plaintiff's true or primary purpose is improper"). It
is not uncommon for courts interpreting Virginia corporate law
to look for guidance from other courts, especially Delaware
corporate law. *See, e.g.*, *Abella v. Universal Leaf Tobacco Co.*,

Defendant contends that Pagliara does not have a proper purpose because he seeks to inspect records so as to bring a derivative lawsuit, which he lacks standing to pursue. Pagliara counters that the proper-purpose standard in Virginia does not consider whether a stockholder would have standing to pursue the claim he is investigating. Furthermore, Pagliara argues that he is seeking to investigate several direct claims, which he would have standing to bring.

As an initial point, the Court concludes that it is not a proper purpose to investigate a lawsuit that a stockholder lacks standing to bring. This conclusion follows naturally from the Virginia Supreme Court's statement that a proper purpose must protect the inspector's "rights as a shareholder." *Skeens*, 471 S.E.2d at 183. When interpreting nearly identical language in Delaware's records-inspection statute, the Delaware Supreme Court has noted that inspection into a lawsuit that cannot be effectuated due to lack of standing is not a proper purpose. *United Techs. Corp. v. Treppel*, 109 A.3d 553, 559 & n.31 (Del. 2014). The reasoning behind that rule is simple, a "purpose is

*Inc.*, 546 F. Supp. 795, 799-800 (E.D. Va. 1982) (looking to Delaware for guidance on stockholder derivative litigation); *U.S. Inspect, Inc. v. McGreevy*, No. 160966, 2000 WL 33232337, at *4 (Va. Cir. Ct. Nov. 27, 2000); *Milstead v. Bradshaw*, No. C96-1498, 1997 WL 33616661, at *6 (Va. Cir. Ct. Oct. 3, 1997) (finding "great persuasive authority" in Delaware cases discussing standing to bring a derivative lawsuit).

not reasonably related to [a plaintiff's] interest as a
stockholder as [he] would not have standing to pursue a
derivative action based on any potential breaches." *Polygon
Global Opportunities Master Fund v. W. Corp.*, No. Civ. A. 2313-
N, 2006 WL 2947486, at *5 (Del. Ch. Oct. 12, 2006); *Graulich v.
Dell*, No. 5846-CC, 2011 WL 1843813 (Del. Ch. May 16, 2011); *W.
Coast Mgmt. & Capital, LLC v. Carrier Access Corp.*, 914 A.2d
636, 645-46 (Del. Ch. 2006). By Pagliara's own admission, he
lacks standing to pursue a derivative claim. Accordingly, if
the purpose of his inspection is the pursuit of such a claim,
that purpose is not proper.

          The face of the Complaint reveals that Pagliara "seeks
these corporate records primarily for the purpose of
investigating potential claims arising from the 'Net Worth
Sweep.'" (Compl. ¶ 4.) Those anticipated claims are lawsuits
for breaches of fiduciary and statutory duties by Freddie Mac
directors, along with claims regarding Treasury and FHFA's
involvement in the Board's operation. As even Pagliara's
briefing appears to contemplate, those are derivative claims.[19]
*See Wenzel v. Knight*, No. 3:14-cv-432, 2015 WL 222182, at *3

_____

[19]      *See* Pl.'s Mem. in Opp'n at 22 ("Mr. Pagliara thus may
be entitled to bring the potential derivative claims he seeks to
investigate . . . ."); Compl. ¶ 123 (discussing "other claims
the Company may have against the Board, FHFA, and/or Treasury").

(E.D. Va. Jan. 14, 2015) ("[S]hareholders may assert claims of fiduciary breach against corporate directors only through shareholder derivate suits."); *Simmons v. Miller*, 544 S.E.2d 666, 675 (Va. 2001) (recognizing general rule that "suits for breach of fiduciary duty against officers and directors must be brought derivatively on behalf of the corporation and not as individual shareholder claims").  Accordingly, Pagliara would lack standing to pursue those claims and those anticipated lawsuits cannot support Pagliara's records-inspection request.[20]

Pagliara also seeks to investigate claims for breaches of rights arising from the contractual relationship between a stockholder and Freddie Mac.  Although it may be possible to formulate those claims as direct lawsuits, Pagliara's hypothetical standing to pursue such claims does not persuade

---

[20]   The Court is not persuaded by Pagliara's argument that he may have standing to pursue a derivative claim because FHFA and/or Treasury may have a conflict of interest.  (*See* Pl.'s Mem. in Opp'n at 22.)  All courts known to have considered that argument in the context of HERA have found the argument unavailing.  *See, e.g.*, *Perry Capital LLC v. Lew*, 70 F. Supp. 3d 208, 230-31 (D.D.C. 2014) ("[T]he Court finds that HERA's plain language bars shareholder derivative suits, without exception."); *see also In re Fed. Home Loan Mortg. Corp. Derivative Litig.*, 643 F. Supp. 2d 790, 797-98 (E.D. Va. 2009), *aff'd sub nom.* 434 F. App'x 188 (4th Cir. 2011); *Esther Sadowsky Testamentary Trust v. Syron*, 639 F. Supp. 2d 347, 350 (S.D.N.Y. 2009).  This Court sees no reason to rule differently here.

the Court of Pagliara's proper purpose.[21]  To be proper, a purpose must "not adversely affect the corporation's interests." *Skeen*, 471 S.E.2d at 183.  Pagliara's past actions toward Freddie Mac's board of directors indicate he will use his records inspection to undermine FHFA's administration of Freddie Mac.  Pagliara's Dividend Letter urged Freddie Mac's directors to "cause the Corporation to immediately stop declaring and paying dividends to Treasury on account of the Senior Preferred Stock."  (Dividend Letter [Dkt. 1-1] at 79.)  Pagliara also emphasized to the board that a "director who votes for or assents to a distribution made in violation of Virginia law is personally liable to the corporation."  (*Id.* at 81; Demand at 46-47, 49.)  Those letters show that Pagliara is pursuing extrajudicial means of encouraging Freddie Mac's board to break away from FHFA's direction and to declare dividends for Freddie Mac stockholders.  Given HERA's extraordinarily broad grant of operational discretion to FHFA and the bar on courts taking "any action to restrain or affect the exercise of powers or functions

---

[21]     It is noteworthy that one court has already concluded that Freddie Mac stockholders lack the very contractual right that Pagliara seeks to protect through this records inspection request.  *See Perry Capital*, 70 F. Supp. 3d at 238-39 ("Without a contractual right to dividends, the plaintiffs cannot state a claim for breach of contract specifically based on their alleged dividend entitlements.")

of the Agency as a conservator," 12 U.S.C. § 4617(f),[22] the Court

concludes that granting Pagliara's inspection request into

contractual claims would adversely affect Freddie Mac's

interests.  *See Skeens*, 471 S.E.2d at 183 (finding adverse

effect on corporation from anticipated stockholder lawsuit).

The only purpose Pagliara identifies that is

unaffected by the two deficiencies discussed above is Pagliara's

desire to value his shares.  Although courts have permitted

records inspection based on that purpose,[23] it does not support

inspection in this case.  The Court has little confidence

Pagliara seeks these records for valuation purposes.  That

purpose appears last on a list of twelve other purposes the

Court finds do not support inspection.  Additionally, Freddie

Mac is a publicly traded company, such that a market already

exists for valuing its stock.  (Compl. ¶ 29 & n.1.)

Accordingly, the Court cannot conclude that share valuation is

Pagliara's true purpose and inspection into the issue will not

open the door to the adverse effects the Court identified

---

[22]     As the court in *Perry* aptly stated, § 4617(f) "is
illustrative of Congress' intention to transfer 'all'
shareholder rights to the conservator so that it could work,
unimpeded, to save [Freddie and Fannie] from impending
collapse."  *Perry*, 70 F. Supp. 3d at 232 n.31.
[23]     *See CM&M Grp., Inc. v. Carroll*, 453 A.2d 788, 793
(Del. 1982); *Hillman v. Douglas Eng'g Co.*, 702 So. 2d 156, 160
(Ala. Civ. App. 1997).

regarding Pagliara's desire to investigate his potential lawsuits.

In sum, the Court concludes that Pagliara does not retain the right to inspect corporate records. Even if Pagliara did possess that right, the Court will dismiss the Complaint because Pagliara does not have a proper purpose. Because the Court will not order Freddie Mac to permit inspection into its records, the Court need not decide whether 12 U.S.C. § 4617(f) would bar such an order. Additionally, because the Court will dismiss this Complaint, it need not consider FHFA's alternative motion to be substituted as plaintiff.

### IV.      Conclusion

For the foregoing reasons, the Court will dismiss Pagliara's Complaint seeking to inspect the corporate books and records of the Federal Home Loan Mortgage Corporation.

An appropriate order will issue.


_____
                              /s/
August 23, 2016                 James C. Cacheris
Alexandria, Virginia        UNITED STATES DISTRICT COURT JUDGE

32